488 S.E.2d 376 (1997)
200 W.Va. 101
STATE of West Virginia ex rel. the WEST VIRGINIA DIVISION OF NATURAL RESOURCES; Charles B. Felton, Jr., Director, West Virginia Division of Natural Resources; and James D. Fields, Chief, Law Enforcement Division, West Virginia Division of Natural Resources, Relators,
v.
Honorable Danny O. CLINE, Judge of the Circuit Court of Braxton County; Shelly L. DeMarino, Prosecuting Attorney for Gilmer County; and Ernest V. Morton, Jr., Prosecuting Attorney for Webster County, Respondents.
No. 23840.
Supreme Court of Appeals of West Virginia.
Submitted January 14, 1997.
Decided February 20, 1997.
Dissenting Opinion of Justice Maynard July 17, 1997.
*378 Darrell V. McGraw, Jr., Attorney General, Daynus Jividen, Senior Assistant Attorney General, Charleston, for Relators.
Shelly L. DeMarino, Prosecuting Attorney for Gilmer County, Glenville, Daniel B. Dotson, III, Assistant Prosecuting Attorney for Webster County, Webster Springs, for Respondents.
DAVIS, Justice:
In this original proceeding for a writ of prohibition, the relator, the West Virginia Division of Natural Resources [hereinafter W. Va. DNR or DNR],[1] requests that we vacate an order entered June 12, 1996, by the respondent judge, the Honorable Danny O. Cline, of the Circuit Court of Braxton County, ruling that W. Va.Code § 20-2-5(10) (1994) (Repl.Vol.1996), which prohibits the carrying of loaded firearms in or on any vehicle, is an unreasonable restriction of the rights contained in W. Va. Constitution Article III, Section 22. Article III, Section 22 of the W. Va. Constitution permits a person to keep and bear arms "for lawful hunting and recreational use." The relator further requests that we prohibit the respondents, Shelly L. DeMarino, Prosecuting Attorney for Gilmer County, and Ernest V. Morton, Jr., Prosecuting Attorney for Webster County, from refusing to enforce violations of W. Va.Code § 20-2-5(10). We issued a rule to show cause. We grant the writ of prohibition.

I.

FACTUAL AND PROCEDURAL HISTORY
The facts underlying this original jurisdiction proceeding are not in dispute. At approximately 4:50 p.m. on December 8, 1994, an officer of the W. Va. DNR charged Hubert Neel with carrying a loaded gun in his vehicle in violation of W.Va.Code § 20-2-5(10).[2] Following this incident, Neel was *379 convicted, in the Magistrate Court of Braxton County, of violating this statute. Neel then filed a petition for writ of prohibition in the Circuit Court of Braxton County challenging the constitutionality of his conviction pursuant to W. Va. Constitution Article III, Section 22.[3] Following a hearing, the respondent judge, the Honorable Danny O. Cline, entered an order on June 12, 1996, ruling, in part, "[t]he provisions of Chapter 20, Article 2, Section 5(10) is [sic] not a reasonable restriction on the rights granted by the constitutional provisions contained in Article 3, Section 22" and ordering, in part, "the said ticket issued to the Petitioner [Neel] on December 8, 1994, be, and the same is hereby, dismissed with prejudice as being violative of the rights guaranteed to the Petitioner by Article 3, Section 22 of the West Virginia Code [sic]."
In response to Judge Cline's ruling, Daniel B. Dotson, III, Assistant Prosecuting Attorney for Webster County,[4] prepared a memorandum dated June 18, 1996, informing the Department of Natural Resources, the West Virginia State Police, the Webster County Sheriff's Department, the Webster Springs Police Department, and the Cowen Police Department of the above-described order invalidating W.Va.Code § 20-2-5(10). Mr. Dotson further stated, "[b]ased upon the holding of the Hon. Judge Cline, I do hereby instruct all law enforcement officers in Webster County, that this office no longer will prosecute any violation(s) of having a loaded gun in a vehicle, based upon the constitutional ruling of Judge Cline's order."[5]
Shortly thereafter, on June 24, 1996, the respondent Shelly DeMarino, Prosecuting Attorney for Gilmer County, authored a similar memorandum directed to the Department of Natural Resources, the West Virginia State Police, the Gilmer County Sheriff's Department, the Glenville City Police, and the Glenville State College Campus Police. In this correspondence, respondent DeMarino described Judge Cline's decision and "instruct[ed] all law enforcement officers in Gilmer County, that this office no longer will prosecute any violation(s) of having a loaded gun in a vehicle, based upon the constitutional ruling of Judge Cline's order."
Finally, on September 17, 1996, Dotson sent a second memorandum addressed to all law enforcement officers. In this writing, Dotson reiterated that "this [the Webster County Prosecuting Attorney's] office will no longer prosecute that violation of Chapter 20 that deal [sic] with a loaded gun in a vehicle during hunting season pursuant to the law in this Circuit as promulgated by the enclosed order [of Judge Cline entered June 12, 1996]." Dotson additionally stated, "it is my interpretation that should an officer write a ticket to a person for having a loaded gun in the vehicle that the individual would open himself up to a suit of abuse of process in his individual capacity, as well as that officers [sic] agency."
Given respondent Judge Cline's ruling that W.Va.Code § 20-2-5(10) is unconstitutional and the refusal of respondents DeMarino and Morton to enforce violations of this statute, the W. Va. DNR recognized the potential for inconsistent enforcement of this statutory *380 provision throughout the various counties of this State. Accordingly, the DNR filed a petition for writ of prohibition requesting this Court determine the constitutionality of W.Va.Code § 20-2-5(10) with regard to W. Va. Constitution Article III, Section 22.

II.

DISCUSSION
In this original proceeding, we are asked to determine whether W.Va.Code § 20-2-5(10) violates the constitutional right to bear arms set forth in W. Va. Constitution Article III, Section 22. Although we have previously reviewed this constitutional amendment, see, e.g., State v. Daniel, 182 W.Va. 643, 391 S.E.2d 90 (1990); State ex rel. City of Princeton v. Buckner, 180 W.Va. 457, 377 S.E.2d 139 (1988), we have never before addressed the validity of the statute at hand. We will begin our discussion with a brief explanation of the applicable standard of review. Then, we will proceed to evaluate the constitutionality of W.Va.Code § 20-2-5(10).

III.

STANDARD OF REVIEW
The relators are before this Court pursuant to their petition for writ of prohibition. Typically, we limit our exercise of original jurisdiction through prohibition because "[m]andamus, prohibition and injunction against judges are drastic and extraordinary remedies.... As extraordinary remedies, they are reserved for really extraordinary causes." State ex rel. Suriano v. Gaughan, 198 W.Va. 339, 345, 480 S.E.2d 548, 554 (1996) (citations omitted). With specific reference to the writ of prohibition, we have noted that "[t]he rationale behind a writ of prohibition is that by issuing certain orders the trial court has exceeded its jurisdiction, thus making prohibition appropriate." State ex rel. Allen v. Bedell, 193 W.Va. 32, 36, 454 S.E.2d 77, 81 (1994) (Cleckley, J., concurring). Accordingly, in order "[t]o justify this extraordinary remedy, the petitioner has the burden of showing that the lower court's jurisdictional usurpation was clear and indisputable and, because there is no adequate relief at law, the extraordinary writ provides the only available and adequate remedy." Id., 193 W.Va. at 37, 454 S.E.2d at 82. In the case presently before us, we find that the relators have satisfied this burden and may properly challenge, by way of prohibition, the circuit court's invalidation of W.Va.Code § 20-2-5(10) as unconstitutional.
Having determined that prohibition is appropriate in this instance, we turn now to our previous decisions addressing W.Va. Constitution Article III, Section 22. Our prior decision in State ex rel. City of Princeton v. Buckner examined the constitutionality of W.Va.Code § 61-7-1 (1975) (Repl.Vol.1989), requiring an individual to possess a license in order to carry a dangerous or deadly weapon, in light of the "Right to Keep and Bear Arms Amendment," W. Va. Constitution Article III, Section 22. We concluded that the licensing provision violated Section 22 because it impermissibly infringed upon an individual's right to bear arms. 180 W.Va. at 462-63, 377 S.E.2d at 144-45. In reaching this conclusion, we determined that Section 22 should be applied, not construed, because its language is clear and unambiguous. 180 W.Va. at 462, 377 S.E.2d at 144. We further ascertained:
the right to keep and bear arms guaranteed by W. Va. Const. art. III, § 22 is not unlimited. The individual's right to keep and bear arms and the State's duty, under it [sic] police power, to make reasonable regulations for the purpose of protecting the health, safety and welfare of its citizens must be balanced.
180 W.Va. at 466-67, 377 S.E.2d at 148-49 (citation omitted).
Attempting to clarify the State's police power, we noted:
"[t]he police power is the power of the state, inherent in every sovereignty, to enact laws, within constitutional limits, to promote the welfare of its citizens. The police power is difficult to define precisely, because it is extensive, elastic and constantly evolving to meet new and increasing demands for its exercise for the benefit of society and to promote the general welfare. It embraces the power of the state to preserve and to promote the general *381 welfare and it is concerned with whatever affects the peace, security, safety, morals, health and general welfare of the community. It cannot be circumscribed within narrow limits nor can it be confined to precedents resting alone on conditions of the past. As society becomes increasingly complex and as advancements are made, the police power must of necessity evolve, develop and expand, in the public interest, to meet such conditions."
Syl. pt. 3, State ex rel. City of Princeton v. Buckner, 180 W.Va. 457, 377 S.E.2d 139 (quoting Syl. pt. 5, State ex rel. Appalachian Power Co. v. Gainer, 149 W.Va. 740, 143 S.E.2d 351 (1965)).
We further considered the permissible regulation of firearms in other jurisdictions, such as prohibiting persons previously convicted of a felony from possessing handguns and restricting one's ability to carry a concealed weapon, see 180 W.Va. at 465, 377 S.E.2d at 147, and concluded:
[t]he West Virginia legislature may, through the valid exercise of its police power, reasonably regulate the right of a person to keep and bear arms in order to promote the health, safety and welfare of all citizens of this State, provided that the restrictions or regulations imposed do not frustrate the constitutional freedoms guaranteed by article III, section 22 of the West Virginia Constitution, known as the "Right to Keep and Bear Arms Amendment."
Syl. pt. 4, State ex rel. City of Princeton v. Buckner, 180 W.Va. 457, 377 S.E.2d 139. However, as a final note of caution, we admonished:
a governmental purpose to control or prohibit certain activities, which may be constitutionally subject to state regulation under the police power, may not be achieved by means which sweep unnecessarily broadly and thereby invade the realm of protected freedoms, such as the right to keep and bear arms guaranteed in our State Constitution.
Id., 180 W.Va. at 467, 377 S.E.2d at 149 (citation omitted).
More recently, we reviewed the constitutionality of W.Va.Code § 61-7-11 (1989) (Repl.Vol.1992), making it unlawful to brandish or otherwise use a firearm in a threatening manner, with regard to Article III, Section 22 of the W. Va. Constitution. State v. Daniel, 182 W.Va. 643, 650, 391 S.E.2d 90, 97 (1990). In Daniel, we concluded that the challenged statute was, in fact, a "legitimate exercise of [the State's] police power." Id. Explaining our decision, we stated that a "citizen still has the right to bear and keep the firearm in question, assuming that it does not violate a properly enacted state regulation. However, nothing in that constitutional amendment gives that citizen the right to use that weapon unlawfully[.]" Id. Thus, Daniel represents a valid exercise of the State's police power in the regulation of firearms as contemplated by Buckner. See also State v. Ivey, 196 W.Va. 571, 474 S.E.2d 501 (1996) (approving State's exercise of police power by upholding W.Va.Code § 20-2-57 (1991) (Repl.Vol.1996) which classifies as misdemeanor negligent shooting, wounding, or killing of another while hunting).

IV.

CONSTITUTIONAL ANALYSIS
We turn now to the issue presented in this case.[6] W.Va.Code § 20-2-5(10) (1994) *382 (Repl.Vol.1996), which sets forth "[u]nlawful methods of hunting," directs:
Except as authorized by the director, it is unlawful at any time for any person to:

....
(10) Have in his possession a loaded firearm or a firearm from the magazine of which all shells and cartridges have not been removed, in or on any vehicle or conveyance, or its attachments, within the state, except as may otherwise be provided by law or regulation. Except as hereinafter provided, between five o'clock postmeridian of one day and seven o'clock antemeridian, eastern standard time of the day following, any unloaded firearm, being lawfully carried in accordance with the foregoing provisions, shall be so carried only when in a case or taken apart and securely wrapped. During the period from the first day of July to the thirtieth day of September, inclusive, of each year, the foregoing requirements relative to carrying certain unloaded firearms shall be permissible only from eight-thirty o'clock postmeridian to five o'clock antemeridian, eastern standard time[.]
(Emphasis added). Moreover, W. Va. Constitution Article III, Section 22 provides:

A person has the right to keep and bear arms for the defense of self, family, home and state, and for lawful hunting and recreational use.

(Emphasis added).
In Buckner, we concluded that because the language of Section 22 is clear, its provisions should be applied rather than construed. 180 W.Va. at 462, 377 S.E.2d at 144. A strict application of this constitutional provision indicates that a person may keep and bear arms with regard to hunting only if such hunting is lawful. Section 20-2-5(10) specifically denotes that carrying a loaded firearm in a vehicle is an unlawful manner of hunting. Thus, applying Section 22 to the statute in question demonstrates that there is no conflict between the two provisions since transportation of a loaded firearm is not a lawful method of hunting with firearms. As an unlawful manner of hunting, the transportation of a loaded firearm is not subject to constitutional protection.
Despite the strict application of Article III, Section 22, it is also necessary to determine whether section 20-2-5(10) is a valid exercise of the State's police power. In Buckner, we determined that the legislature could reasonably regulate an individual's right to keep and bear arms, but cautioned that a "legitimate governmental purpose in regulating the right to bear arms cannot be pursued by means that broadly stifle the exercise of this right where the governmental purpose can be more narrowly achieved." 180 W.Va. at 464, 377 S.E.2d at 146 (citation omitted). A review of W.Va.Code § 20-2-5(10) indicates that it is a reasonable and narrow restriction of a person's right to bear arms.
The State has a legitimate police power interest in protecting its citizens from the dangers of transporting loaded firearms. Prohibiting the vehicular transportation of loaded firearms is the only manner in which citizens can be protected from the potential discharge of loaded firearms in vehicles. The restriction is reasonable because it does not infringe upon a sportsperson's right to keep and bear arms for hunting purposes. Rather, it merely regulates the manner in which such weapons may be transported.[7] Likewise, this statute is narrowly tailored to achieve the State's purpose. As noted above, the only manner in which to protect individuals from the accidental discharge of loaded firearms transported in vehicles is to require all such weapons to be unloaded. Thus, we hold that the provisions of W.Va.Code § 20-2-5(10) (1994) (Repl.Vol.1996) prohibiting the vehicular transportation of a loaded firearm do not violate the right to keep and bear arms for lawful hunting purposes enunciated in W.Va. Constitution Article III, Section 22.
In our decision of this case, we wish to clarify further the nature of the State's police power in the specific context of firearms *383 regulations. Although the facts presently before the Court suggest a rather harmless incident of transporting a loaded gun in a vehicle, the tragic experience of other jurisdictions does not support this interpretation. Rather, the jurisprudence of other states recounts many unfortunate accidents arising from the seemingly innocent practice of transporting a loaded gun in a vehicle. See, e.g., State Farm Mut. Auto. Ins. Co. v. Partridge, 10 Cal.3d 94, 514 P.2d 123, 109 Cal. Rptr. 811 (1973) (passenger paralyzed when driver drove over rough terrain in pursuit of game causing loaded pistol to discharge); Glens Falls Ins. Co. v. Rich, 49 Cal.App.3d 390, 122 Cal.Rptr. 696 (1975) (passenger injured when driver attempted to remove loaded shotgun from under front seat of car during hunting outing); Kohl v. Union Ins. Co., 731 P.2d 134 (Colo.1986) (two bystanders injured and one bystander killed when loaded rifle discharged while hunter attempted to remove it from gun rack of jeep); Hutcherson v. Amen, 98 Idaho 776, 572 P.2d 879 (1977) (driver injured when loaded hunting rifle, resting in camper shell of truck, discharged); Reliance Ins. Co. v. Walker, 33 N.C.App. 15, 234 S.E.2d 206, review denied, 293 N.C. 159, 236 S.E.2d 704 (1977) (bystander injured when loaded rifle, resting in gun rack of truck, discharged as a result of vibrations from driver or passenger sitting on truck seat or driver's starting of truck engine); State Farm Mut. Auto. Ins. Co. v. Powell, 227 Va. 492, 318 S.E.2d 393 (1984) (bystander killed when loaded shotgun in gun rack of truck discharged); Allstate Ins. Co. v. Truck Ins. Exch., 63 Wis.2d 148, 216 N.W.2d 205 (1974) (driver killed when passenger's loaded rifle discharged while passenger was exiting truck in pursuit of game). See generally 1 Windle Turley & James E. Rooks, Jr., Firearms Litigation: Law, Science, and Practice §§ 14.01, 14.03-14.05 (1988), and cases cited therein.
In fact, one authority proposes "that the universally accepted wisdom on transportation of firearms is that they should never be carried loaded inside an automobile." Id. at § 14.04, p. 503 (emphasis in original; footnote omitted).[8] It is because of these tragedies that we condone the legislature's exercise of its police power to regulate the vehicular transportation of firearms for hunting purposes. The police power enables the State "to enact laws, within constitutional limits, to promote the general welfare of its citizen[s]." State ex rel. City of Princeton v. Buckner, 180 W.Va. at 464, 377 S.E.2d at 146 (citations omitted). The realistic possibility of fatal accidents arising from the transportation of loaded firearms, supported by the ill-fated narratives of other states, clearly suggests that the prohibition contained in W.Va.Code § 20-2-5(10) safeguards the "security, ... health[,] and general welfare," 180 W.Va. at 464, 377 S.E.2d at 146 (citations omitted), of the citizens of this State. Thus, this statute represents a valid exercise of the State's police power.

V.

CONCLUSION
For the foregoing reasons, we hold that W.Va.Code § 20-2-5(10) (1994) (Repl.Vol. 1996) does not violate W.Va. Constitution Article III, Section 22. Accordingly, the writ of prohibition is granted.
Writ granted.
MAYNARD, Justice, dissenting:
A drunk driver in West Virginia is legally permitted to carry a loaded gun in his vehicle while a sober hunter, a sportsman experienced in handling guns, is not! Such is the curious result that necessarily follows this Court's holdings in State ex rel. City of Princeton v. Buckner, 180 W.Va. 457, 377 S.E.2d 139 (1988) and the majority opinion in this case.
*384 In Buckner, the driver of a vehicle was arrested by a police officer for DUI. Upon searching the driver, the police officer discovered a .22 caliber automatic pistol inside the driver's jacket pocket. The driver informed the police officer that he did not have a license that allowed him to carry such a weapon. The police officer presented these facts to a magistrate and sought a warrant for the driver's arrest for the DUI offense. The magistrate advised the police officer that he would not issue a warrant for carrying a dangerous and deadly weapon against the driver based upon the magistrate's conclusion that W.Va.Code § 61-7-1 (1975)[1] violated W.Va. Const. art. III, § 22, the state's recently ratified Right to Keep and Bear Arms Amendment. In Buckner, this Court concluded that W.Va.Code § 61-7-1 impermissibly infringed upon the constitutionally protected right to bear arms for defensive purposes. In the current case, this Court inexplicably concludes, however, that W.Va. Code § 20-2-5(10), which makes it a crime for a hunter to have a loaded gun in his vehicle, is constitutional. In reaching such a conclusion, this Court has befuddled the clear and succinct language of the Right to Keep and Bear Arms Amendment, and has approved a confusing and bewildering statutory scheme.
On November 4, 1986, the voters of West Virginia approved the Right to Keep and Bear Arms Amendment by a vote of 342,963 to 67,168.[2] Thus, not only did 85% of those voting approve the amendment, but "[w]ith more than five votes in favor to every one vote opposed, the amendment passed in every county in the state."[3] This amendment is necessary, in part, because the Second Amendment to the United States Constitution[4] has not been applied to the states. The Second Amendment operates to protect from federal restraint the right of the people to keep and bear arms which is necessary for a well regulated militia. West Virginia's Right to Keep and Bear Arms Amendment provides that:
A person has the right to keep and bear arms for the defense of self, family, home and state, and for lawful hunting and recreational use.
Thus, unlike the Second Amendment, West Virginia's Amendment clearly guarantees the right of an individual to keep and bear arms for specifically enumerated purposes. This Amendment is the last clear word on the right to keep and bear arms in West Virginia.
In its majority opinion, this Court concludes that W.Va.Code § 20-2-5(10) (1994), prohibiting the vehicular transportation of a loaded firearm, does not violate the right to keep and bear arms for lawful hunting purposes. I believe that this holding muddies the water on the right to keep and bear arms, and raises many more questions than it answers. The first question that comes to mind is whether this statute prohibits the vehicular transportation of a loaded firearm only when hunting or is it prohibited universally, for example, when a person is driving to or from work or the grocery store? The majority analyzes this statute solely in the context of hunting. If, however, this statute is to be applied universally and generally, I believe that it plainly constitutes an unreasonable regulation of the right of a person to keep and bear arms for the defense of self and family. A complete prohibition on the vehicular transportation of a loaded gun would, of course, eviscerate the right to keep and bear arms for defense of self and family while traveling in a vehicle, and would operate as a significant exception to the clear language of our constitutional amendment. *385 Such a prohibition is even more stringent than that found to be unconstitutional in Buckner, which did allow a person to carry about his person a revolver or pistol provided he had a state license to do so.
Chapter 61, Article 7 of the W.Va.Code concerns the regulation of "dangerous weapons" generally. In light of the ratification of the Right to Keep and Bear Arms Amendment and this Court's holding in Buckner, Chapter 61, Article 7 was extensively amended. W.Va.Code § 61-7-1 (1989) states:
The Legislature finds that the overwhelming support of the citizens of West Virginia for article three, section twenty-two of the Constitution of this State, commonly known as the "Right to Keep and Bear Arms Amendment", combined with the obligation of the state to reasonably regulate the right of persons to keep and bear arms for self-defense requires the reenactment of this article.
The general prohibition on carrying a firearm without a license found constitutionally unacceptable in Buckner has been replaced with a prohibition on carrying a "concealed deadly weapon" without a state license or other lawful authorization.[5] Chapter 61, Article 7, specifically tailored to accommodate the Right to Keep and Bear Arms Amendment, does not contain a general prohibition on the vehicular transportation of a loaded firearm.[6]
Chapter 20, Article 2 of the W.Va.Code, concerns "wildlife resources", and W.Va.Code § 20-2-5 is titled "[U]nlawful methods of hunting and fishing and other unlawful acts." This code section does not specifically refer to the Right to Keep and Bear Arms Amendment; nevertheless, it contains numerous firearm restrictions besides the one at issue. In fact, if these provisions were applied generally and not only to hunters, they would significantly restrict the right to keep and bear arms.
For example, W.Va.Code § 20-2-5(8) (1994) provides that "it is unlawful at any time for any person,"
Except as provided in section six [§ 20-2-6] of this article, [to] carry an uncased or loaded gun in any of the woods of this state except during the open firearms hunting season for wild animals and nonmigratory wild birds within any county of the state, unless he has in his possession a permit in writing issued to him by the director: Provided, That this section shall not prohibit hunting or taking of unprotected species of wild animals and wild birds and migratory wild birds, during the open season, in the open fields, open water and open marshes of the state[.] (Emphasis added).
Does this mean that the Constitution and the Right to Keep and Bear Arms Amendment is *386 suspended in the woods of West Virginia, but not in the cities?
W.Va.Code § 20-2-5(9) makes it unlawful:
Except as provided in subdivision (11) below or in section six of this article, [to] carry an uncased or loaded gun after the hour of five o'clock antemeridian on Sunday in any woods or on any highway, railroad right-of-way, public road, field or stream of this state, except at a regularly used rifle, pistol, skeet, target or trapshooting ground or range[.]
Does this mean the Constitution and the Right to Keep and Bear Arms is repealed every Sunday at 5:00 o'clock a.m.? And, is that standard time or daylight savings time?
The specific provision at issue here, W.Va. Code § 20-2-5(10), makes it unlawful for any person to:
Have in his possession a loaded firearm or a firearm from the magazine of which all shells and cartridges have not been removed, in or on any vehicle or conveyance, or its attachments, within the state, except as may otherwise be provided by law or regulation. Except as hereinafter provided, between five o'clock postmeridian of one day and seven o'clock antemeridian, eastern standard time of the day following, any unloaded firearm, being lawfully carried in accordance with the foregoing provisions, shall be so carried only when in a case or taken apart and securely wrapped. During the period from the first day of July to the thirtieth day of September, inclusive, of each year, the foregoing requirements relative to carrying certain unloaded firearms shall be permissible only from eight-thirty o'clock postmeridian to five o'clock antemeridian, eastern standard time[.]
Rube Goldberg must have written this! For this one, before you carry a gun, you better have, along with the gun, a calendar, a watch and a lawyer (if you can find one who understands the statute and can reconcile it with the Right to Keep and Bear Arms Amendment) to explain this statute.
This is the specific statute this Court has just upheld in the majority opinion. Let's see now if we can apply this statute in a sensible way. It says you cannot carry a loaded gun in a vehicle anywhere at anytime, and if it is unloaded, it must also be cased or wrapped, from 5:00 p.m., eastern standard time of each day until 7:00 a.m. eastern standard time of the next day, except during the period from July 1 to September 30 each year, then it must be cased from 8:30 p.m. each day until 5:00 a.m., eastern standard time, the next day. What about the period from spring to fall when daylight savings time is in effect? The statute provides only for eastern standard time? Do we expect people to make their own calculations and adjust the time?in a criminal statute? Further, does this apply to police officers? They are not excepted and the statute says it is "unlawful for any person."
The most bizarre provision, however, must be W.Va.Code § 20-2-6 (1961) which provides:
Notwithstanding any other provisions of this chapter, it shall be lawful for a bona fide resident of this State, any member of said landowner's family and any bona fide tenant of said landowner, to carry an uncased gun at any time, whether accompanied by or without a dog, in their regular pursuits in caring for and looking after such landowner's livestock or poultry on his land and on any lands leased or rented by him for livestock or poultry husbandry purposes. (Emphasis added).
Does this mean if a landowner is hauling livestock in a vehicle to the market he can carry a loaded firearm in that vehicle? What if he is hauling only feed for the livestock from a store to his land, can he carry a loaded gun? If so, do the after 5:00 p.m. (or 8:30 p.m.) rules apply to him, or is he exempt? If not exempt, what does the phrase "at any time" mean? If applied generally to the right to keep and bear arms, these provisions apparently mean that a citizen of West Virginia has the right to keep and bear arms for the defense of self, family, home and state except in his or her vehicle; except in the woods of the state unless it is open firearms hunting season; except on any highway, railroad right-of-way, public road, field or stream after 5:00 a.m. on Sunday until who knows when; and except on his or her *387 own property, unless in the pursuit of looking after and caring for livestock and poultry. (At least the law does not make him keep the dog with him all the time!) What, then, remains of the constitutional right to keep and bear arms.
Apparently, the public thinks a person without a permit may still carry a gun that is not concealed anytime on a public city street, or in a bank, bookstore, convenience store, restaurant, record store, pawn shop, bike shop, and grocery store.[7] A very interesting story recently appeared in the Sunday Gazette-Mail. A news reporter openly carrying a gun in downtown Charleston went into all those locations and got almost no reaction! Also, W.Va.Code § 20-2-6 appears to be at variance with W.Va.Code § 61-7-6 (1996), which provides that any person carrying a deadly weapon upon his own premises is excepted from the prohibition against carrying concealed deadly weapons without a license, and W.Va.Code § 61-7-8 (1989), which provides that "a minor may possess a firearm upon premises owned by said minor or his family[.]" These code sections do not make carrying a firearm on one's own property contingent upon caring for and looking after livestock or poultry.
In sum, I believe that W.Va.Code § 20-2-5(10), as well as all the other provisions mentioned above, if applied universally and generally, are unreasonable. Also, these provisions effectively stifle the right to keep and bear arms for defensive purposes, and, thus violate the Right to Keep and Bear Arms Amendment.
As noted above, however, the majority opinion deals solely with whether W.Va.Code § 20-2-5(10) violates the right to keep and bears arms for lawful hunting purposes. It is possible that W.Va.Code § 20-2-5(10) and its accompanying provisions apply only to hunting. But, if this is true, my second question concerns why hunters are singled out as the target of such restrictive and muddled provisions, and drunk drivers are not. As noted in the opening paragraph of this dissent, applying these provisions only to hunters gives rise to a variety of anomalous results. For example, let's say two vehicles are traveling down the road, one immediately in front of the other. Both vehicles are stopped by law enforcement officers and both are found to contain loaded firearms. The driver of the first vehicle informs the officer that he is not going hunting, rather, he is going to the grocery store and is exercising his constitutional right to carry a gun for defense of self. Driver number one is clearly not, therefore, in violation of W.Va.Code § 20-2-5(10), since that provision does not apply to him. He is allowed to go on his way. The driver of the second vehicle, however, informs the officer that he is going hunting, and is therefore in violation of W.Va.Code § 20-2-5(10), and he goes to jail for a hundred days. Of course, as more and more drivers become sophisticated in the ways of West Virginia law, they will understand the importance of carrying a loaded gun in their vehicles solely for the purpose of defense, and the law enforcement officer's task of deciding whether W.Va.Code § 20-2-5(10) is applicable in any given situation will become increasingly more difficult. Certainly, all of this points to the preposterous situation of applying more stringent firearm restrictions to hunters than to the general population, especially considering the fact that hunters are far more likely to be experienced in firearm use and safety.
Finally, I believe that the firearm restrictions contained in W.Va.Code § 20-2-5(10) and its accompanying provisions quoted above, besides the fact that some are just silly, are so needlessly complex and confusing that they fail to plainly and adequately inform a person of what the law demands, and thus provide a dangerous trap for the unwary. In fact, our gun control law is so balkanized that most lawyers would have trouble unraveling the tangle of firearm provisions contained in W.Va.Code § 20-2-5, *388 W.Va.Code § 61-7-1 and the Constitution. A citizen of this state who desires to exercise his constitutional right to keep and bear arms must be informed of all the above-quoted provisions and their numerous confusing restrictions as to:
A. the manner in which he must carry his firearm (loaded/unloaded; cased/uncased; broken down/not broken down, etc.),
B. the place (his own property, woods, highway, railroad right-of-way, public road, field or stream, rifle, pistol, skeet, target or trapshooting ground or range),
C. the hour (between 5:00 p.m. of one day and 7:00 a.m. of the next or 8:30 p.m. of one day and 5:00 a.m. of the next),
D. the day (is it Sunday?),
E. the time of year (October 1 to June 30 or July 1 to September 30),
F. the activity (am I caring for or looking after livestock or poultry, or am I simply a person on my own premises?),
and how all of these work together and with other statutes and the Constitution.
This Court has stated that "[a] criminal statute must be set out with sufficient definiteness to give a person of ordinary intelligence fair notice that his contemplated conduct is prohibited by statute and to provide adequate standards for adjudication." Syllabus Point 1, State v. Flinn, 158 W.Va. 111, 208 S.E.2d 538 (1974). Also,
[i]t is elementary that an act creating a statutory offense, to be valid, must specify with reasonable certainty and definiteness the conduct which is commanded or prohibited, that is, what must be done or avoided, so that a person of ordinary intelligence may know what is thereby required of him * * * The enactment should define the acts to be done or not to be done which constitute such offense with such certainty that a person may determine whether or not he has violated the law at the time he does or fails to do the act, which is charged to be a violation thereof[.]
Southern Railway v. Commonwealth, 205 Va. 114, 116-117, 135 S.E.2d 160, 164 (1964) (Citation omitted). To be really fair, the criminal law should be so simple and clear that the dumbest guy on the street can understand it. Unfortunately, those who would exercise their constitutional right to keep and bear arms for whatever lawful purpose are now confronted with numerous questions concerning the applicability of W.Va.Code § 20-2-5(10), and how it interacts with Chapter 61, Article 7 concerning the regulation of dangerous weapons in general. The majority opinion leaves these questions unanswered. Also, there remains the daunting task of deciphering W.Va.Code § 20-2-5(10) and the other provisions of W.Va.Code § 20-2-5 that concern the regulation of firearms.
In conclusion, I believe that the majority opinion upholds a statute that is unconstitutional and unreasonably restricts the right to keep and bear arms. According to W.Va. Code § 20-2-1 (1969), the policy underlying Chapter 20, Section 2 is the protection of the wildlife resources of the State "for the use and enjoyment of all the citizens of this State." Clearly, the detailed and complex firearm restrictions in this code section are unnecessary for the accomplishment of this purpose. The restrictions sweep too broadly and infringe on the constitutional right to keep and bear arms.
The overwhelming majority of the voters of this state desire the right to keep and bear arms for defense of self, family, home and state, for lawful hunting, and for recreational purposes. With this holding, however, this Court has flagrantly disregarded the will of the great majority and sided, instead, with the 15% who would interfere with those who keep and bear arms for lawful purposes. In so doing, this Court is only doing what courts all over America do: thwart democracy by ignoring the will of the people. While the will of the majority is regularly done by the executive and legislative branches of government, it is just as regularly ignored everywhere by the courts in favor of the wishes of special interest groups with radical agendas. These groups can only impose their will on the majority with the aid of the courts. That is not democratic. It does not matter if one is in favor of guns or not, we should all be in favor of democracy. On this issue in West Virginia the great majority has spoken. *389 Democratic principles demand that this Court listen.
The Court's holding in this case leaves the right to keep and bear arms in an extremely vague and contradictory state. Considering the uncertainty and confusion now confronting gun owners, I am reminded of a fellow I once knew when in happier times I lived in southern West Virginia. His name was Jim Tom. Like most true West Virginians, Jim Tom really loved the outdoors and spent every possible minute in the woods and mountains. Unfortunately, however, Jim Tom was absolutely terrified of snakes. He was so afraid of snakes that all the time he spent outdoors was marred by the constant fear he would be bitten by a snake. Jim Tom continued to be absolutely obsessed with this unreasonable fear, until one day when his friend, who was also his doctor, gave him a bottle of rattlesnake anti-venom. Suddenly, his problem was solved. Jim Tom placed the bottle of anti-venom in the pocket of his hunting vest, and began to enjoy nature to its fullest, secure in the knowledge that if he were ever bitten, immediate help was at hand.
One day, however, Jim Tom's worst fears were realized when he stepped on a rotten log and was bitten by a huge rattlesnake. Sheer panic seized him but suddenly gave way to soothing relief, when Jim Tom remembered the bottle of anti-venom in his vest. He calmly and very carefully removed the bottle of anti-venom and slowly sat down to read the directions for use printed on the package. But it was with a sinking heart and a sense of doom that poor old Jim Tom realized that the directions had been written by the West Virginia Supreme Court of Appeals!
NOTES
[1] The West Virginia Division of Natural Resources is a state agency which functions, in part, to enforce violations of hunting, wildlife, and natural resources regulations. See W.Va. Code §§ 20-1-3 (1996) (Supp.1996), 20-1-13 (1995) (Repl.Vol.1996).
[2] W.Va.Code § 20-2-5(10) (1994) (Repl.Vol. 1996), describing "[u]nlawful methods of hunting" provides:

Except as authorized by the director, it is unlawful at any time for any person to:
....
(10) Have in his possession a loaded firearm or a firearm from the magazine of which all shells and cartridges have not been removed, in or on any vehicle or conveyance, or its attachments, within the state, except as may otherwise be provided by law or regulation. Except as hereinafter provided, between five o'clock postmeridian of one day and seven o'clock antemeridian, eastern standard time of the day following, any unloaded firearm, being lawfully carried in accordance with the foregoing provisions, shall be so carried only when in a case or taken apart and securely wrapped. During the period from the first day of July to the thirtieth day of September, inclusive, of each year, the foregoing requirements relative to carrying certain unloaded firearms shall be permissible only from eight-thirty o'clock postmeridian to five o'clock antemeridian, eastern standard time[.]
(Emphasis added). In 1996, the West Virginia Legislature amended W.Va.Code § 20-2-5(10) by adding the following provision to the end of this section: "Provided, That the time periods for carrying unloaded and uncased firearms are extended for one hour after the postmeridian times and one hour before the antemeridian times established above if a hunter is preparing to or in the process of transporting or transferring the firearms to or from a hunting site, campsite, home or other place of abode." W.Va.Code § 20-2-5(10) (1996) (Supp.1996). Despite these subsequent changes, we find that the 1994 version of this statute applies to the instant case since the underlying statutory violation occurred in 1994. We note further that the after-daylight requirements of carrying an unloaded firearm in a case or disassembled do not apply to the facts before us because Neel was apprehended at 4:50 p.m., shortly before compliance with the additional measures would have been required.
[3] Article III, Section 22 of the W.Va. Constitution, entitled "Right to Keep and Bear Arms," states:

A person has the right to keep and bear arms for the defense of self, family, home and state, and for lawful hunting and recreational use. (Emphasis added).
[4] Webster County is located within the Fourteenth Judicial Circuit over which Judge Cline presides. The Fourteenth Judicial Circuit also encompasses the counties of Braxton, Clay, and Gilmer.
[5] Although Ernest V. Morton, Jr., Prosecuting Attorney for Webster County, is named as a respondent in this matter, it does not appear from the record that he participated in the preparation or distribution of Dotson's memorandum.
[6] At the outset, we recognize that several other jurisdictions have constitutional provisions permitting one to bear arms for hunting purposes which are similar to W.Va. Constitution Article III, Section 22. See Del. Const. art. I, § 20; Neb. Const. art. I, § 1; Nev. Const. art. I, § 11; N.M. Const. art. II, § 6; N.D. Const. art. I, § 1. Similarly, the majority of these jurisdictions have statutes prohibiting the vehicular transportation of loaded firearms either with specific regard to hunting or under general circumstances. See Del.Code Ann. tit. 7, § 708 (1996) (Supp.1996); Neb.Rev.Stat. § 37-501 (1989) (Repl.Vol.1993); Nev.Rev.Stat. § 503.165 (1987) (Main Vol.1995): N.M.Stat.Ann. § 30-7-2 (Michie 1985) (Repl. Pamph.1994). But see N.D.Cent.Code § 62.1-02-10 (1985) (Repl.Vol.1995) (exempting persons engaged in lawful hunting from statute prohibiting carrying loaded firearm in motor vehicle). Nevertheless, we are unable to look to these states for guidance in this area because no other jurisdiction has addressed the constitutional inquiry with which we currently are faced.
[7] Because the portion of W.Va.Code § 20-2-5(10) (1994) (Repl.Vol.1996) requiring that unloaded firearms also be contained within a case or disassembled between certain specified hours does not pertain to the facts of the instant case, we decline to rule upon the constitutionality of that portion of the statute.
[8] The National Rifle Association of America [NRA] recognizes the dangers involved in transporting a loaded firearm in a vehicle and specifically recommends against this practice. See, e.g., NRA Hunter Services Division, National Rifle Association of America, Firearm Safety and the Hunter (n.d.) (cautioning "[w]hen a gun is being carried in a vehicle ... follow these rules of safe gun handling: [b]e sure the gun is unloaded"; also advising hunters to "[a]lways unload your gun before entering your vehicle").
[1] W.Va.Code § 61-7-1 (1975) provided in part:

If any person, without a state license therefor or except as provided elsewhere in this article and other provisions of this Code, carry about his person any revolver or pistol, dirk, bowie knife, slung shot, razor, billy, metallic or other false knuckles, or other dangerous or deadly weapon of like kind or character, he shall be guilty of a misdemeanor[.]
[2] Michael O. Callaghan, State v. Buckner and the Right to Keep and Bear Arms in West Virginia, 91 W.Va. L.Rev. 425, 436 (1989).
[3] Id. (footnote omitted).
[4] The Second Amendment to the United States Constitution states that "[a] well regulated militia, being necessary to the security of a free state, the right of the people to keep and bear arms shall not be infringed."
[5] According to W.Va.Code § 61-7-2(10) (1989):

"Concealed" means hidden from ordinary observation so as to prevent disclosure or recognition. A deadly weapon is concealed when it is carried on or about the person in such a manner that another person in the ordinary course of events would not be placed on notice that the deadly weapon was being carried.
[6] W.Va.Code § 61-7-6 (1996), titled "Exceptions as to prohibitions against carrying concealed deadly weapons does state in part:

The licensure provisions set forth in this article shall not apply to:
(1) Any person carrying a deadly weapon upon his own premises; nor shall anything herein prevent a person from carrying any firearm, unloaded, from the place of purchase to his or her home, residence or place of business or to a place of repair and back to his or her home, residence or place of business, nor shall anything herein prohibit a person from possessing a firearm while hunting in a lawful manner or while traveling from his or her home, residence or place of business to a hunting site, and returning to his or her home, residence or place of business;
(2) Any person who is a member of a properly organized target-shooting club authorized by law to obtain firearms by purchase or requisition from this state, or from the United States for the purpose of target practice, from carrying any pistol, as defined in this article, unloaded, from his home, residence or place of business to a place of target practice, and from any such place of target practice back to his home, residence or place of business, for using any such weapon at such place of target practice in training and improving his skill in the use of such weapons[.]" (emphasis added).
Even though this section refers to the transportation of unloaded weapons, it appears to specifically concern the transportation of concealed weapons as the title of the section suggests.
[7] See Greg Stone, Packing HeatAnd Few People React, The Sunday Gazette-Mail, July 7, 1996, at 1A.

Note, however, that W.Va.Code § 61-7-14 (1989) provides, in part, that "any owner, lessee or other person charged with the care, custody and control of real property may prohibit the carrying openly or concealing of any firearm or deadly weapon on property under his or her domain[.]"