KERMIT A. LOCKE *v.* COUNTY COURT OF RALEIGH COUNTY
and
J. S. BUTTS *v.* COUNTY COURT OF RALEIGH COUNTY

(Nos. 7173)
( 7174)

Submitted October 6, 1931. Decided October 13, 1931.

*M. L. Painter,* for relators.
*Kyle D. Harper,* for respondent.

LIVELY, JUDGE:

Relators, Locke and Butts, assert that they are *de jure* and *de facto* probation officers of the county of Raleigh and by these mandamus proceedings seek to compel the county court of that county to pay their respective salaries now in arrear. The county court replies that Kyle D. Harper and. T. C. Glashen were appointed probation officers for that county on the 31st day of January, 1929, and November 30, 1929, respectively, by the judge of the circuit court and that the last two named persons claim to be the probation officers under that appointment, and that a doubt has arisen in the minds of the members of the county court as to which of the two sets of probation officers they should pay the salaries; and therefore it has entered an order declining to pay any salary to any probation officer; and respondent seems to take the position that Harper and Glashen are the probation officers entitled

to the office and pay, and ask that the peremptory writ of mandamus be not issued.

The judge of the criminal court of Raleigh County, acting under chapter 49, article 2, sections 1 and 5, Code 1931, having recommended to the county court the appointment of Locke and Butts as probation officers, and the members of the county court acting with the superintendent of schools as a board to pass upon such recommendations, having approved such persons recommended as being competent for such positions and having filed their approval with the clerk of the juvenile court (which is the criminal court), entered an order on the records of said criminal court and juvenile court on March 5, 1931, appointing Locke and Butts as probation officers for the county to serve during the pleasure of said court or the judge thereof, and fixed the salaries to be paid to each of them at $50.00 per month. The same day these two officers thus appointed took the oath of office as required by the statute and filed the same with the clerk of the county court on the 5th day of March, 1931. They thereupon entered on the discharge of their duties and assert that from then they have discharged the same faithfully and that since the 28th day of May, 1931, they have not received their respective salaries because of an order entered on that day by the county court declaring it would pay no probation officer for his services after May, 1931, as shown by a copy of the order.

The county court admits the appointment, qualifications and induction into office of Locke and Butts as above set out; but in its return it says that Glashen was appointed in the place of Brown W. Payne, the then probation officer, by the circuit court on January 3, 1929, his term to begin immediately with the appointment; and that Harper was appointed November 30, 1929, by the same court to succeed Mrs. M. Gaujot; his term to begin on that day. Both of these officers were appointed at the will and pleasure of the judge of the circuit court, and their compensation was the same as that provided for in the appointment of the relators, namely, $50:00 a month for each. Respondent seems to claim that these last named persons are the legal probation officers and are entitled to the

salaries. Who are the probation officers at this time? That is the controlling question.

It may be well to review the acts of the legislature relating to child welfare. The acts of 1915, chapter 70, relating to dependent, neglected or delinquent children, provided in section 2 thereof that the circuit and criminal courts should have original jurisdiction of all cases coming within the terms of the act, and their findings entered in the juvenile record, and that the court, when sitting in such cases, should, for convenience, be called the "Juvenile Court". The act of 1917, chapter 63, amended and reenacted section 2, chapter 70, acts 1915, and gave to the circuit courts original jurisdiction, except in counties where there was a court of common pleas, or intermediate court having chancery jurisdiction; and in such case, the common pleas or intermediate court (as the case might be) should have exclusive original jurisdiction of all cases, subject to appeal to the circuit court; but if in any county there was no court of chancery jurisdiction except the circuit court, and there was a criminal court, then the criminal court was given concurrent jurisdiction with the circuit court. The same provision was carried into chapter 111, Acts 1919. No change was made in the concurrent jurisdiction of circuit and criminal courts until the Code of 1931, which provides, in 49-2-1, as follows: "The circuit courts of this state shall have original jurisdiction in all cases coming within the terms of this article, *except* that in counties where a domestic relations court, or where a court of common pleas or intermediate court having chancery jurisdiction, has been or may hereafter be created, or if there be no such court, but there be a criminal court, then the *proceedings provided by this article* (italics ours) shall be in such domestic relations court, court of common pleas, intermediate court, or criminal court, with right of appeal to the circuit court of such county." This section clearly provides that the circuit courts shall have original jurisdiction of all cases coming within the act, except in counties where there is a criminal court, which latter court shall have jurisdiction of all proceedings provided by the article, with right of appeal to the circuit court. That article, in section 5 thereof designates the court which shall recommend

to the county court commissioners and the county superintendent of school, the persons to act as probation officers, and upon the approval of a majority of them, or their failure to act within 30 days, then to appoint such persons as such officers, and fix their salaries within the sums designated in the act. Said section 5 says: "The courts in this state which have and exercise juvenile jurisdiction shall have authority to appoint probation officers" by the procedure above set out. Under the plain language of these two sections, the judge of the criminal court of Raleigh County had the power and authority to appoint probation officers for his juvenile court. It is most unusual to allow one court to appoint another court's officers. We know of no such instances in legislation. The plain intent of the act was to give jurisdiction of procedure and trials in child welfare matters to the criminal court, or the other inferior courts named, if there be such. Otherwise, the jurisdiction was conferred upon the circuit courts.

But it is contended that the circuit courts have jurisdiction of child welfare without legislation to that effect, under the general powers conferred on them by the constitution, and that their jurisdiction to hear and try such matters cannot be abridged by the legislature. In other words, that if the act be construed so as to deprive the circuit courts of their power to appoint probation officers and to hear child welfare cases, then the act is unconstitutional as repugnant to article 8, section 12, defining the jurisdiction of circuit courts. That section reads: "The circuit court shall have the supervision and control of all proceedings before justices and other inferior tribunals, by mandamus, prohibition and certiorari. They shall, except in cases confined exclusively by this Constitution to some other tribunal, have original and general jurisdiction of all matters at law where the amount in controversy, exclusive of interest exceeds fifty dollars; of all cases of habeas corpus, mandamus, quo warranto, and prohibition; and of all cases in equity, and of all crimes and misdemeanors. They shall have appellate jurisdiction in all cases, civil and criminal, where an appeal, writ of error or supersedeas may be allowed to the judgment or proceedings of any inferior tribunal. They shall also have such other jurisdiction, whether

supervisory, original, appellate, or concurrent, as is or may be prescribed by law." It is argued that the child welfare acts relating to delinquent, dependent and neglected children, and the methods devised to remove them from delinquency, dependency and neglect, are, in their nature, criminal, and partake of criminal prosecutions, and therefore the clause in the above quoted section of the constitution which says the circuit courts shall have original and general jurisdiction of "all cases in equity, *and of all crimes and misdemeanors*", applies. The child welfare acts are not for the purpose of trials for crime and to impose punishments therefor. They are designed to reform and take care of delinquent, dependent and neglected children, and to that end all children under the age of 21 are considered as wards of the state for the purposes of the act, and their persons subject to the care, guardianship and control of the juvenile courts. Child welfare and the methods of conserving it is one of the great modern reforms, and jurisdiction for that purpose in any court or other tribunal was not contemplated when our constitution was formed in 1872. The section above quoted contemplates that new subjects of jurisdiction other than matters of law where the amount in controversy exceeds $50.00; cases of habeas corpus, mandamus, quo warranto, prohibition, cases in equity, and crimes and misdemeanors, would arise; for it provides that such other jurisdiction whether supervisory, original, appellate or concurrent may be given the circuit courts as is or may be prescribed by law. If original jurisdiction were intended to be conferred on circuit courts of every subject matter, it would have been tautology to say they should have other original jurisdiction as may be prescribed by law.

Respondent relies upon *Robinson* v. *Railroad*, 80 W. Va. 290, where the act, creating the common pleas court of Kanawha County, which provided that appeals from that court should be direct to the supreme court was challenged as violative of the constitution, section 19, article 8, which gives the legislature power to establish courts of limited jurisdiction with the right of appeal to the circuit court; and section 12 of the same article which gives the circuit courts appellate jurisdiction of appeals and writs of error from any inferior

tribunal. That part of the common pleas act which abrogated the constitutional right of circuit courts to hear appeals and writs of error from the common pleas court was plainly in violation of the express terms of the constitution. That case has no application here. It would be applicable if the child welfare act violated, in terms or by necessary implication, any part of the constitution. The conferring of power and rights on the criminal court to appoint probation officers to assist that court in dispatching its juvenile court business does not violate any express provision of the constitution. It is the duty of courts to uphold and vivify the acts of the legislature. It must be clear that the constitution has been violated before an act will be declared void. "To doubt is to affirm the validity of the law." *Bridges* v. *Shallcross*, 6 W. Va. 562; *Ex parte McNeeley*, 36 W. Va. 84. The act of 1931, above mentioned, is constitutional. That act conferred power on the criminal court to appoint its probation officers. The judge of that court superseded the judge of the circuit court in the exercise of that power, and when the former made the appointment of relators, his will and pleasure was exercised, and the services of Harper and Glashen were automatically ended. Relators are the probation officers, and are entitled to the salaries.

*Writs awarded.*