527 S.E.2d 790

WILLIAM D.A., Sr., Petitioner
Below, Appellee,

v.

SHAWNA RENEE A. and Stephen
Everett A., Respondents
Below, Appellees,

Renee A.C., Intervenor Below, Appellant.

No. 25894.

Supreme Court of Appeals of
West Virginia.

Submitted Sept. 22, 1999.

Decided Dec. 13, 1999.

Concurring Opinion of Justice Davis and
Dissenting Opinion of Chief Justice
Starcher Jan. 6, 2000.

James A. Walker, Esquire Logan, West Virginia Attorney for the Appellee, William D.A., Sr.

Henry E. Wood, III, Esquire Wood Law Office, L.C. Charleston, West Virginia Attorney for the Appellant.

David Allen Barnette, Esq., Monica L. Hussell, Esq., Jackson & Kelly, P.L.L.C. Charleston, West Virginia Attorneys for Amici Curiae Burlington United Methodist Family Services, Inc. and South Central Christian's Home, Inc., dba Child Place.

PER CURIAM:

In this appeal, Renee A.C., the mother of two infant children, Shawna Renee A. and Stephen Everett A., claims that a consent to adoption signed by her was obtained through the duress of the children's paternal grandfather, and that the Circuit Court of Logan County erred in recognizing the consent to adoption and in allowing the children's paternal grandfather, to adopt the children.

## I.

### FACTS

During the fall of 1995, differences arose between the appellant, Renee A.C., and her husband, William D.A., Jr., and they concluded that they wished to end their marriage. As a consequence, a divorce action was instituted in the Circuit Court of Logan County.

In the course of the divorce action, the appellant and her husband entered into a separation agreement which provided that the appellant was to have the care and custody of the parties' two infant children, Shawna Renee A. and Stephen Everett A., and that the appellant's husband would pay $500 per month child support. The provisions of the separation agreement relating to child custody and child support were subsequently adopted by the circuit court and were incorporated into the order granting the parties a divorce.

In the present proceeding, the appellant alleges that her former husband never made the child support payments due and that as a result of a series of disasters she became impoverished. Specifically, she claims that on May 15, 1996, a flood destroyed the premises occupied by her tanning bed business, her only source of income, and that subsequently she was involved in a disabling automobile accident. As a consequence of her impoverishment, her utilities were cut off, and she was unable to buy groceries or other necessities for herself and her children.

The appellant further alleges that in the desperation growing out of her bad luck, she turned to her former father-in-law, William D.A., Sr., who, she claims, had been a father figure to her. After the flood, she entrusted her tanning beds to him for safekeeping, and when she was having difficulty in providing for her children, she allowed William D.A., Sr., to take the children on a beach vacation to Florida.

Following the return of the children from Florida, William D. A., Sr. proposed to adopt the children and later asked the appellant to sign a "Consent to Adoption." After some time, the appellant, on July 26, 1996, signed the document.

After the appellant signed the consent to adoption, William D.A., Sr. instituted an adoption proceeding in the Circuit Court of Logan County. In the course of this proceeding, in late October 1996, approximately three months after the "Consent to Adoption" was executed, the appellant moved to intervene and took the position that she had not voluntarily signed the "Consent to Adoption" and it had been obtained by duress, fraud and other unconscionable conduct.

The Circuit Court of Logan County allowed the intervention and conducted hearings on January 30, 1998 and March 6, 1998. At the conclusion of the hearings, the judge, on August 3, 1998, entered an order which included extensive findings of fact and conclusions of law. The judge specifically found that William D.A., Sr., "did not threaten, coerce, trick, or commit any unconscionable act to induce Ida Renee C . . . into executing the consent form." The court noted that the appellant testified under oath that she understood all the words contained in the consent form and that all the statements contained in the document were true at the time she signed it. The judge also found that the minor children who had been living with William D.A., Sr., and his wife, were enrolled in school and were doing well, both academically and in terms of attendance, and that William D.A., Sr., and his wife has provided for the educational, social and health needs of both of the children. The judge concluded that the appellant had given her written consent to the adoption of the children, as required by West Virginia law and:

> That it would be in the best interests of both of the minor children to approve the requests contained in the prayer of the petition and allow the Petitioner to adopt the children in order to provide closure to this matter and to provide stability in the lives of the children.

The court went on to state that William D.A., Sr. was credible in describing how he and his wife had attempted to stay uninvolved in the domestic problems of their son and the appellant, and that the appellant's level of credibility was rather low, and that the appellant was unable to recall the details of the events which she alleged had constituted the duress, fraud, and unconscionable con-

duct resulting in the "Consent to Adoption." The court noted that the appellant likely suffered from emotional difficulties, but that there was no evidence that these difficulties in any way affected the voluntariness of her consent. The court, therefore, authorized the adoption of the children by William D.A., Sr. It is from that ruling that the appellant now appeals.

## II.

### BURDEN OF PROOF

■ This Court has indicated that findings and conclusions of a circuit court of the type involved in this case, should be reviewed under a two-prong standard. The underlying factual findings are reviewed under a clearly erroneous standard, and questions of law are subject to *de novo* review. *Burnside v. Burnside*, 194 W.Va. 263, 460 S.E.2d 264 (1995). Further, in Syllabus Point 1 of *In the Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996), the Court indicated that a finding is:

[C]learly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety.

## III.

### DISCUSSION

It appears that the principal question which confronted the trial judge in this case was whether the "Consent to Adoption" executed by the appellant obtained through duress on the part of William D.A., Sr. A secondary question is whether William D.A., Sr., used fraud or other unconscionable conduct to procure the "Consent to Adoption."

■ In *Wooten v. Wallace*, 177 W.Va. 159, 351 S.E.2d 72 (1987), the Court examined the type of conduct which would constitute duress sufficient to overturn a consent to adoption. We concluded that something more than difficulty inherent in a natural parent's personal circumstances, or "duress of circumstance," had to be present for these to constitute duress sufficient to justify the overturning of a consent to adoption. This conclusion was summarized in Syllabus Point 2 of *Wooten v. Wallace*, *id.*, as follows:

The term "duress," as used in *W. Va.Code*, 48–4–1a [1965], means a condition that exists when a natural parent is induced by the unlawful or unconscionable act of another to consent to the adoption of his or her child. Mere "duress of circumstance" does not constitute duress under *W. Va. Code*, 48–4–1a [1965].[1]

In *Wooten v. Wallace*, *id.*, the Court indicated that there had to be an act on the part of the person adopting or some other third party that was so egregious as to be unconscionable for a finding of duress sufficient to justify the overturning of a consent. We noted that: "It is difficult to conceive of circumstances in which a natural parent would place a child up for adoption unless the parent's personal circumstances were in some way incompatible with taking care of the child." *Wooten v. Wallace*, *id.*, at 161, 351 S.E.2d at 74. We also noted if we allowed difficulty inherent in a natural parent's circumstances to constitute duress, it would be difficult to see how any adoption based on consent could ever stand. In the later case of *Baby Boy R. v. Velas*, 182 W.Va. 182, 386 S.E.2d 839 (1989), the Court stressed that duress in the adoption context:

[M]eans a condition that exists when a natural parent is induced by the unlawful

---

1. West Virginia's adoption law has been amended since the decision in *Wooten v. Wallace*. The new law provides that an adoption may be set aside upon duress or fraud being established by clear and convincing evidence, but it in no way alters the definition of duress or fraud. The relevant portion of the new statute states:

(a) Parental consent or relinquishment, whether given by an adult or minor, may be revoked only if:

\* \* \*

(2) The person who executed the consent or relinquishment proves by clear and convincing evidence, in an action filed either within six months of the date of the execution of the consent or relinquishment or prior to the date an adoption order is final, whichever date is later, that the consent or relinquishment was obtained by fraud or duress.

W. Va.Code 48–4–5(a)(2).

or unconscionable act of another to consent to the adoption of his or her child.

*Baby Boy R. v. Velas, id.* at 185, 386 S.E.2d at 842.

In a number of prior cases, this Court has also discussed what constitutes fraud or duress. In Syllabus Point 3 of *Cordial v. Ernst & Young,* 199 W.Va. 119, 483 S.E.2d 248 (1996), the Court indicated that the essential elements of fraud are:

(1) [T]hat the act claimed to be fraudulent was the act of the defendant or induced by him;

(2) [T]hat it was material and false; that the plaintiff relief upon it and was justified under the circumstances in relying upon it; and

(3) [T]hat he was damaged because he relied upon it.

In the present case, a substantial portion of what the appellant asserts induced her to sign the "Consent to Adoption" consisted of evidence that she was poverty stricken. She did claim that her former husband had failed to make child support payments, but there is no indication that his motivation in failing to make the payments was to coerce her into signing the "Consent to Adoption."

Of greater significance is a claim that William D.A., Sr., held her tanning beds "hostage" to coerce her into entering into the "Consent to Adoption." As has previously been stated, William D.A., Sr., clearly did take possession of the tanning beds, after the appellant's tanning salon was destroyed by flood waters. It appears that William D.A., Sr., was storing the tanning beds as an accommodation to the appellant. The appellant claimed that William D.A., Sr., issued ultimatums and demands which led to her signing the "Consent to Adoption" to which she was required to agree before he would release her tanning beds. William D.A., Sr., specifically denied that he had made any ultimatums or demands relating to the tanning beds or that he held them "hostage." Further, there is evidence that the appellant and William D.A., Sr. did not discuss the tanning bed business after October 25, 1995, some two months prior to July 26, 1996, when she executed the "Consent to Adoption."

The records available to the Court in this case show that the "Consent for Adoption" was prepared and provided to the appellant sometime before its execution on July 26, 1988. The appellant had an opportunity to examine and consider it out of the presence of William D.A., Sr. She also had an opportunity to obtain independent advice concerning it. The documents filed indicate that the appellant, after receiving the "Consent to Adoption," and after having an opportunity to examine it, carried the consent form to William D.A., Sr.'s work office in Danville, West Virginia, at which time William D.A., Sr. procured a notary to acknowledge the appellant's signature. The appellant executed the consent in the presence of the notary and turned it over to William D.A., Sr.

■ After reviewing the record before the Court, we cannot conclude that the trial court committed reversible error in concluding that William D.A., Sr. did not procure the consent to adoption through duress. Further, although the appellant took the position during a portion of the time prior to the execution of the "Consent to Adoption" trusted in William D.A., Sr. and held him in high esteem, there was a factual basis for the court to conclude that she executed the "Consent to Adoption" through her own volition and that William D.A., Sr. did not make material and false representations upon which the appellant relied in executing the "Consent to Adoption" suggesting that he did not commit fraud and indicating that the trial court did not err in refusing to hold that the "Consent to Adoption" was procured through fraud or other unconscionable conduct.

The judgment of the Circuit Court of Logan County is, therefore, affirmed.

Affirmed.

Justice SCOTT did not participate in the decision in this case.

Judge FRED RISOVICH, II, sitting by temporary assignment.

DAVIS, Justice, concurring:

(Filed Jan. 6, 2000)

The majority opinion in this case absolutely correct. While it is true that the Appellant's circumstances at the time she consented to the adoption were genuinely unfortunate, we must not let the sympa-

thetic story of one woman who happened to be down on luck unravel the entire scheme of adoption law in this state. These laws have been enacted to protect the interests of all the parties involved in an adoption proceeding, primarily the children. See, e.g., W.Va. Code § 48–4–3 (1997) (Repl. Vol. 1999) (setting forth persons whose consent or relinquishment is required for adoption, and defining specific circumstances under which court may order adoption without consent or relinquishment); W.Va. Code § 48–4–3a (1997) (Repl. Vol. 1999) (providing that no consent or relinquishment may be executed prior to seventy-two hours after birth of child to be adopted, and enumerating persons who must witness and acknowledge a consent or relinquishment); W.Va. Code § 48–4–6(a) (1997) (Repl. Vol. 1999) (giving prospective adopting parent right to receive birth, medical and family medical history of child); W.Va. Code § 48–4–6(b) (requiring that child live with prospective adopting parent for no less than six-months prior to hearing on petition for adoption); W.Va. Code § 48–4–8 (1997) (Repl. Vol. 1999) (designating who is to receive notice of adoption proceeding); W.Va. Code § 48–4–9(a) (1997) (Repl. Vol. 1999) (stipulating that trial court shall decree adoption only if it first determines, inter alia, that petitioner(s) are fit to adopt child and adoption is in best interests of child).

This statutory scheme includes provisions to protect natural parents who, through fraud or duress, unwittingly consent to place their children for adoption. See W. Va.Code § 48–4–5(a)(2) (1997) (1999) (allowing revocation when "[t]he person who executed the consent or relinquishment proves by clear and convincing evidence, in an action filed either within six months of the date of the execution of the consent or relinquishment or prior to the date an adoption order is final, whichever date is later, that the consent or relinquishment was obtained by fraud or duress"). In this case, the Appellant took advantage of this statutory provision, intervened in the adoption proceeding and put forth her evidence. As the Appellant presented her case, the trial judge had the advantage of observing, first hand, subtleties

such as the Appellant's demeanor during her testimony in the proceedings below.

With the benefit of such observations, the trial court determined that the Appellant's evidence was insufficient and her testimony was not credible. Indeed, the record submitted on appeal reveals that the Appellant's evidence consisted of little more than her own unsupported allegations. Witnesses who testified on her behalf had little direct knowledge of the relevant events. Thus, her credibility was of utmost importance to her case. Credibility determinations are nearly impossible to make from a sterile appellate record, and are better left to the trial court. " '[W]hen findings are based on determinations regarding the credibility of witnesses, Rule 52(a) demands even greater deference to the trial court's findings[.]' " In re Tiffany Marie S., 196 W.Va. 223, 231, 470 S.E.2d 177, 185 (1996) (quoting Anderson v. Bessemer City, N.C., 470 U.S. 564, 575, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518, 529 (1985)). With regard to the Appellant's credibility, the lower court expressly found that "she [was] unable to recall details to support her allegations even though her attorney attempt[ed] to lead her testimony. In addition, she somewhat overplay[ed] her testimony to be convincing and dramatic." [1] To permit a natural parent to revoke her consent to adoption under these circumstances would seriously undermine adoption law in this state.

When addressing issues involving children, especially custody issues, consideration of the best interests of the child must be paramount. See Kessel v. Leavitt, 204 W.Va. 95, 511 S.E.2d 720, 799 (1998) ("the natural right of parents to the custody of their children is always tempered with the courts' overriding concern for the well-being of the children involved."); Syl. pt. 7, In re Brian D., 194 W.Va. 623, 461 S.E.2d 129 (1995) ("Cases involving children must be decided not just in the context of competing sets of adults' rights, but also with a regard for the rights of the child(ren)."); Michael K.T. v. Tina L.T., 182 W.Va. 399, 405, 387 S.E.2d 866, 872 (1989) ("[T]he best interests of the child is

1. In addition, the trial court specifically found that (1) according to the notary who witnessed the Appellant's signature on the Consent to Adoption form, the Appellant conducted herself rationally and expressed no reservations when executing the document; (2) the Appellant is a high school graduate who could read and write; (3) the Consent to Adoption form clearly stated that the Appellant was giving her "full and free consent to the adoption ...," that it was irrevo-

the polar star by which decisions must be made which affect children." (citation omitted)); W.Va.Code § 48–4–9(a) (stipulating that a trial court shall decree adoption only if it first determines, *inter alia*, that petitioner(s) are fit to adopt child and adoption is in best interests of child). Being placed in the middle of a custody battle between natural and adoptive parents is not in the best interests of any child. In an effort to avoid such conflicts, natural parents must be encouraged, indeed, required, to seriously consider the full consequences of a decision to place a child for adoption *before* the adoption proceedings are begun. Natural parents must also know that, absent the occurrence of one of a very limited number of statutory exceptions,[2] their decision is final. To adopt the result advocated by the dissent in this case would send the message that natural parents need not be too concerned about their decision to place their child for adoption because that decision is easily revoked.

STARCHER, Chief Justice, dissenting:

(Filed Jan. 6, 2000)

I dissent. It is clear even in the majority opinion that: (1) an impoverished and distraught mother was urged by her former father-in-law, in a time of turmoil, to sign a paper giving up her children; (2) after less than 3 months, she repented of that action, and asked that the adoption proceedings be stopped; and (3) nearly 2 years later (all the while the children had been away from her), a court held that she had not been tricked or lied to, and had no right to change her mind.

I would say that this mother did indeed have the right to see the truth—that in a moment of grave distress, she had made a mistake in signing a paper that gave up her "rights" to raise the children she bore and loved—and to act, after she saw the truth, to preserve her family and rectify that mistake.

I would say that a court should respect and honor that truth, and allow that mistake to be corrected, not simply condone the powerful subduing of the weak. I would say that her former husband's parents didn't have the

right to adopt her children, when their mother opposed it.

Accordingly, I dissent.

cable, and that she believed the adoption to be in the best interests of both of her children; (4) the Appellant testified, under oath, that she understood all of the words contained in the Consent to Adoption and that all of the statements therein were true at the time she signed the form; and

(4) it was in the best interests of the children to allow the Appellee's to adopt them.

2. *See* W. Va.Code § 48–4–5 (1997) (Repl.Vol. 1999).