544 S.E.2d 403

STATE of West Virginia ex rel. ROSE L.,
Mary L., Laura L. and Richard L.,
Jr., Petitioners,

v.

Honorable David M. PANCAKE, Judge of
the Circuit Court of Cabell County,
and Richard L., Respondents.

No. 27910.

Supreme Court of Appeals of
West Virginia.

Submitted Jan. 9, 2001.

Decided Feb. 22, 2001.

Concurring Opinion of Justice
Davis March 1, 2001.

L. Victor Navy, Esq., Barboursville, Guardian Ad Litem.

Cathy L. Greiner, Esq., Greiner & Cyrus, Huntington, Children's Advocate Lawyer.

Neil R. Bouchillon, Esq., Bouchillon, Crossan & Colburn, L.C., Huntington, for Respondent Richard L.

STARCHER, Justice.

The guardian *ad litem* ("guardian") appointed to protect the interests of the children of respondent, Richard L.,[1] has petitioned this Court for a writ of prohibition to prohibit the Circuit Court of Cabell County from a hearing a motion filed by Richard L. that requests the circuit court to set aside a document signed by Richard L. in which he agreed to relinquish his parental rights. Richard L. alleged in his motion that he had earlier agreed to relinquish his parental rights, but had done so under duress and fraud just prior to a final disposition hearing in an abuse and neglect case. The circuit court set a hearing date for the motion; however, before the hearing could be conducted, the guardian filed the present petition for a writ of prohibition.

Following our review of the briefs and arguments in this matter, we deny the writ.

I.

*Facts & Background*

On March 14, 1996, the West Virginia Department of Health and Human Resources ("DHHR") filed an abuse and neglect petition in the Circuit Court of Cabell County. The petition alleged that Richard L. and his wife Roberta L. had physically and sexually abused one of their minor children, Rose L.[2] The petition alleged that Rose L., who was then 8 years old, had tested positive for the sexually transmitted disease chlamydia on March 8, 1996.

The circuit judge entered an Emergency Order on the same day the petition was filed removing all four children from the family home and granting temporary legal and physical custody to the DHHR. By separate order on the same day the court also required Richard L. to submit to a medical evaluation to determine if he had chlamydia. According to the respondent's brief, the test of Richard L. for chlamydia was negative.[3]

The child abuse and neglect proceedings against Richard L. were set for final disposition on November 24, 1997. Counsel for Richard L. attempted to have Rose L. subpoenaed to testify at the final disposition, but for reasons that are not clear the subpoena was quashed. Sometime during the course of the hearing, Richard L. entered into an agreement with the State agreeing to relinquish his parental rights to all of his children in exchange for the right to have supervised visitation with the children if they desired to see him. On November 25, 1997, Richard L. signed a document titled "Relinquishment of Parental Rights." The agreement between the State and Richard L. was memorialized

---

1. We follow our past practice in domestic and juvenile cases that involve sensitive facts, and do not use the last names of the parties. *See State v. George W.H.*, 190 W.Va. 558, 562 n. 1, 439 S.E.2d 423, 427 n. 1 (1993).

2. In addition to Rose L. there were three other children residing with Richard and Roberta L. at the time the abuse and neglect petition was filed. Although the March 14, 1996 petition generally alleged abuse and neglect of all four children,

specific factual allegations were made only with respect to Rose.

3. Without providing this Court with the criminal record, the parties in their briefs assert that Richard L. was subsequently charged with criminal sexual abuse. According to the parties, on January 16, 1997, these charges were dismissed without prejudice.

by the circuit court by order entered March 4, 1998.[4]

Sometime later, Richard L. learned that Rose L. desired to see him. Consequently, on June 12, 1999, Richard L. filed a motion with the circuit court requesting that the court order DHHR to arrange for a visitation with his daughter, Rose. Upon reviewing Richard L.'s motion, the circuit judge ordered that Rose L. be brought to the court for an *in camera* hearing to determine if Rose L. did, in fact, desire to visit with her father, and to determine if visitation would be appropriate. During the April 6, 1999 *in camera* hearing Rose L. disclosed to the judge that it was not her father, Richard L., who had sexually abused her, rather, it had been her grandfather.

Following the *in camera* hearing on May 14, 1999, Richard L. filed a motion to "Set Aside Relinquishment of Parental Rights And To Again Set This Matter For Final Hearing." In his motion, Richard L. argued that the relinquishment agreement had been obtained by fraud and duress.

After a review of the case[5] the circuit judge, by order entered June 11, 1999, set Richard L.'s motion for hearing on September 8, 1999.[6] In this order the judge recognized that "[t]here is no legal precedent for such a motion in West Virginia" and "[t]here are substantial equitable principles involved." It is this hearing that the guardian seeks to prohibit.

## II.

### Standard of Review

█ Traditionally, we have held that a writ of prohibition is an extraordinary reme-

dy and should be granted in only the most extraordinary cases. *See, e.g., State ex rel. West Virginia Div. Of Natural Resources v. Cline,* 200 W.Va. 101, 105, 488 S.E.2d 376, 380 (1997). We have stated that " '[p]rohibition lies only to restrain inferior courts from proceeding in causes over which they have no jurisdiction, or, in which, having jurisdiction, they are exceeding their legitimate powers and may not be used as a substitute for writ of error, appeal or certiorari.' Syl. Pt. 1, *Crawford v. Taylor,* 138 W.Va. 207, 75 S.E.2d 370 (1953)." Syllabus Point 2, *Cowie v. Roberts,* 173 W.Va. 64, 312 S.E.2d 35 (1984). We have further held that:

[i]n determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear

---

4. The March 4, 1998 order, in addition to memorializing the agreement between Richard L. and the State, also memorialized the events of the November 24–25, 1997 hearing, and "TERMINATED FOREVER" the parental rights of both Richard L. and Roberta L. to all four of their children, Mary, Laura, Richard, Jr., and Rose, subject to conditional visitation.

5. The record indicates that the transcript of the hearing that was conducted on the day Richard L. signed his relinquishment has been lost.

6. The circuit court judge, in his June 11, 1999 order, stated that:

4. The motion of Richard [L.] to set aside his relinquishment of parental rights should be set for hearing for the following reasons:

a. A close reading of W.Va.Code § 49–6–7, which controls, provides that the agreement of a natural parent in the termination of parental rights shall be valid if made in writing and entered into under circumstances free from duress and free from fraud.

b. This court has more than a suspicion that Richard [L.] may have relinquished his parental rights under duress and fraud[.]

that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

Syllabus Point 4, *State ex rel. Hoover v. Berger*, 199 W.Va. 12, 483 S.E.2d 12 (1996).

■ To justify the execution of a writ of prohibition, a petitioner "has the burden of showing that the lower court's jurisdictional usurpation was clear and indisputable and, because there is no adequate relief at law, the extraordinary writ provides the only available and adequate remedy." *State ex rel. Allen v. Bedell*, 193 W.Va. 32, 37, 454 S.E.2d 77, 82 (1994).

### III.

### *Discussion*

The guardian contends that the circuit court is without jurisdiction to conduct a hearing on Richard L.'s motion arguing that, after the relinquishment of parental rights was signed by Richard L., the circuit court retained only the authority to conduct disposition reviews.

■ We note initially that "[a] circuit court has jurisdiction to entertain an abuse and neglect petition and to conduct proceedings in accordance therewith as provided by W.Va.Code § 49–6–1, *et seq.*" Syllabus Point 3, *State ex rel. Paul B. v. Hill*, 201 W.Va. 248, 496 S.E.2d 198 (1997). We have also stated that circuit courts have "original jurisdiction of all cases coming within the terms of the [child welfare] act[.]" *Locke v. County Court of Raleigh County*, 111 W.Va. 156, 158, 160, 161 S.E. 6, 7 (1931). Consequently, we find that the circuit court in this case has jurisdiction to conduct proceedings that are in accordance with *W.Va.Code*, 49–6–1, *et seq.* [1998].

■ The guardian has requested that this Court prohibit the circuit court from examining the evidence of the events leading up to Richard L. signing the relinquishment of his parental rights. The issue, therefore, is whether the circuit court has the authority to conduct a hearing to determine whether or not to set aside a relinquishment of parental rights that was signed by the petitioner. The statutes that govern abuse and neglect

proceedings provide that "[a]n agreement of a natural parent in termination of parental rights shall be valid if made by a duly acknowledged writing, and entered into under circumstances *free from duress and fraud.*" *W.Va.Code*, 49–6–7 [1977] (emphasis added). This provision would be meaningless if a circuit court could not conduct a hearing to look behind the face of the document to determine whether or not a parent signed the agreement to relinquish their parental rights under circumstances free from duress and fraud.

■ While *W.Va.Code*, 49–6–7 specifically permits a relinquishment of parental rights, it clearly suggests that such an agreement may be invalid if it is not entered into under circumstances that are free of duress and fraud. Whether there has been fraud or duress is a question of fact that must be determined by the circuit court judge. Accordingly, we hold that under the provisions of *W.Va.Code*, 49–6–7, a circuit court may conduct a hearing to determine whether the signing by a parent of an agreement relinquishing parental rights was free from duress and fraud.

### IV.

### *Conclusion*

Based on the forgoing, we deny the writ of prohibition.

Writ Denied.

DAVIS, Justice, concurring.

(Filed March 1, 2001)

The majority opinion addressed a straightforward issue. The Court was asked to determine whether trial courts have jurisdiction to hold a hearing where a parent has relinquished parental rights resulting from an abuse and neglect case and is claiming that the relinquishment was procured as a result of fraud and duress. The majority has correctly held in Syllabus point 3 of the opinion that "[u]nder the provisions of W.Va.Code, 49–6–7, a circuit court may conduct a hearing to determine whether the signing by a parent of an agreement relinquishing parental rights was free from duress and fraud." I concur

in this holding. However, I am compelled to write separately to stress the point that in any proceeding relating to the relinquishment of parental rights the prevailing principle of law is *the best interests of the child.*

### The Best Interests of the Child

There can be little argument that no parent should part with his or her child when the consent to the relinquishment of parental rights is induced by fraud or duress perpetrated by another. The life-long bond between a parent and his or her child is an emotional attachment that stands as a cornerstone of civilization. The realization and existence of this fact, however, is tempered by a longstanding principle of law that in "custody matters, we have traditionally held paramount the best interests of the child." Syl. pt. 5, in part, *Carter v. Carter,* 196 W.Va. 239, 470 S.E.2d 193 (1996).

Because I am committed to making certain that the "best interests of the child" remains the polar star for child custody decisions in West Virginia, I write separately to caution the lower courts that when conducting a hearing subsequent to any relinquishment proceeding, they must give high regard to the interests of the child(ren) involved. *See William D.A., Sr. v. Shawna Renee A.,* 206 W.Va. 679, 683, 527 S.E.2d 790, 794 (1999) (Davis, J. concurring) ("When addressing issues involving children, especially custody issues, consideration of the best interests of the child must be paramount."); *Kessel v. Leavitt,* 204 W.Va. 95, 174, 511 S.E.2d 720, 799 (1998) ("Superior to any rights of parents to the custody of their own children, however, is the overriding consideration of the child's best interests. Thus, the natural right of parents to the custody of their children is always tempered with the courts' overriding concern for the well-being of the children involved."); Syl. pt. 7, *In re Brian D.,* 194 W.Va. 623, 461 S.E.2d 129 (1995) ("Cases involving children must be decided not just in the context of competing sets of adults' rights, but also with a regard for the rights of the child(ren)."); *In re Jeffrey R.L.,* 190 W.Va. 24, 32, 435 S.E.2d 162, 170 (1993) ("Although the rights of the natural parents

to the custody of their child and the interests of the State as parens patriae merit significant consideration by this Court, the best interests of the child are paramount."); *Michael K.T. v. Tina L.T.,* 182 W.Va. 399, 405, 387 S.E.2d 866, 872 (1989) ("[T]he best interests of the child is the polar star by which decisions must be made which affect children.").[1]

Consistent with this consideration for the best interests of the child and the importance of timely and finally resolving custody issues so that a child may attain the stability and security that is so crucial to a young life, it should be pointed out that, obviously, a relinquishment agreement that is made in writing and entered into under circumstances free from duress and fraud *is valid.* A parent attempting to show otherwise is faced with a challenging task. Indeed, the threshold for establishing duress and fraud in the context of the relinquishment of parental rights is extremely high. As to duress, this Court has held that, in the context of an adoption, duress "means a condition that exists when a natural parent is induced by the unlawful or unconscionable act of another to consent to the adoption of his or her child. Mere 'duress of circumstance' does not constitute duress[.]" Syl. pt 2, in part, *Wooten v. Wallace,* 177 W.Va. 159, 351 S.E.2d 72 (1986). *See also Baby Boy R. v. Velas,* 182 W.Va. 182, 185, 386 S.E.2d 839, 842 (1989) ("[Duress] means a condition that exists when a natural parent is induced by the unlawful or unconscionable act of another to consent to the adoption of his or her child."). With respect to fraud, we have held:

> The essential elements in an action for fraud are: (1) that the act claimed to be fraudulent was the act of the defendant or induced by him; (2) that it was material and false; that plaintiff relied on it and was justified under the circumstances in relying upon it; and (3) that he was damaged because he relied on it.

Syl. pt. 1, *Lengyel v. Lint,* 167 W.Va. 272, 280 S.E.2d 66 (1981). *Accord* Syl. pt. 3, *Cordial v. Ernst & Young,* 199 W.Va. 119, 483 S.E.2d 248 (1996); Syl. pt. 2, *Bowling v. Ansted*

---

1. *See also* W. Va.Code § 48–4–9(a)(4) (1999)("[T]he court shall decree the adoption if ... it is in the best interests of the child to order such adoption.").

*Chrysler–Plymouth–Dodge,* 188 W.Va. 468, 425 S.E.2d 144 (1992); Syl. pt. 2, *Muzelak v. King Chevrolet, Inc.,* 179 W.Va. 340, 368 S.E.2d 710 (1988).

Finally, I wish to emphasize that a parent challenging a relinquishment of his or her parental rights on the grounds of duress and fraud has the difficult responsibility of establishing the elements outlined above by *clear and convincing* evidence. *See, e.g.,* 48–4–5(a)(2) (1997) (Repl.Vol.1999) (allowing revocation of adoption due to fraud or duress only where "[t]he person who executed the consent or relinquishment proves *by clear and convincing evidence* ... that the consent or relinquishment was obtained by *fraud or duress* " (emphasis added)); *Bowling v. Ansted Chrysler–Plymouth–Dodge, Inc.,* 188 W.Va. 468, 472, 425 S.E.2d 144, 148 (1992) ("[The] elements [of *fraud* ] must be proved by *clear and convincing evidence.*" (emphasis added)); Syl. pt. 2, *Cardinal State Bank, Nat'l Ass'n v. Crook,* 184 W.Va. 152, 399 S.E.2d 863 (1990) (per curiam) (" 'Allegations of *fraud,* when denied by proper pleading, must be established by *clear and convincing proof.*' Syllabus Point 5, *Calhoun County Bank v. Ellison,* 133 W.Va. 9, 54 S.E.2d 182 (1949)." (emphasis added)); Syl. pt. 2, *Warner v. Warner,* 183 W.Va. 90, 394 S.E.2d 74 (1990) ("Since property settlement agreements, when properly executed, are legal and binding, this Court will not set aside such agreements on allegations of *duress* and undue influence absent *clear and convincing proof* of such claims." (emphasis added)); Syl. pt. 3, *Allegheny Dev. Corp., Inc. v. Barati,* 166 W.Va. 218, 273 S.E.2d 384 (1980) (per curiam) (" 'The *onus probandi* is on him who alleges fraud, and, if the *fraud* is not *strictly and clearly proved* as it is alleged, relief cannot be granted.' Pt. 1, Syl., *Board of Trustees v. Blair,* 45 W.Va. 812, 32 S.E. 203 (1898)." (second and third emphases added)); Syl. pt. 3, *Carroll v. Fetty,* 121 W.Va. 215, 2 S.E.2d 521 (1939) ("In an action for wrongful death, a written release, signed by the beneficiaries entitled to recovery, may be set aside where it was obtained by *duress* exercised by a third party with the participation or knowledge of the releasee. However, such duress must be proved by *clear and convincing evidence* and generally presents a question of fact for the jury." (emphasis added)).

Based upon the foregoing authority, it is clear that a parent has a heavy burden to establish duress or fraud once he or she has relinquished parental rights. Importantly, the inquiry does not end even if a parent satisfies that burden. Ultimately, lower courts must always return to the polar star principle: the best interests of the child. Consequently, even when a parent has successfully proven that fraud or duress played a role in the relinquishment of parental rights, trial courts must *still* consider the best interests of the child before finally resolving custody issues. This critical point must be clearly understood. As we have consistently stated: "the natural right of parents to the custody of their children is always tempered with the courts' overriding concern for the well-being of the children involved." *Kessel,* 204 W.Va. 95, 174, 511 S.E.2d 720, 799.

For the reasons so stated, I concur in the majority opinion.