IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2026 Term

_____

No. 24-765

_____

In re A.A., G.C., K.C.-1, K.C.-2, and P.C.

**FILED**

**May 13, 2026**

released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

_____

Appeal from the Circuit Court of Lincoln County
The Honorable Jay M. Hoke, Judge
Case Nos. CC-22-2023-JA-27, CC-22-2023-JA-28, CC-22-2023-JA-29, CC-22-2023-JA-
30, and CC-22-2023-JA-31

AFFIRMED
_____

Submitted: February 10, 2026
Filed: May 13, 2026

Joseph H. Spano Jr., Esq.
Pritt & Spano, PLLC
Charleston, West Virginia
Counsel for the Petitioner

John B. McCuskey, Esq.
Attorney General
Matthew K. Niu
A. Bolton Caldwell Fellow
Kristen E. Ross, Esq.
Assistant Attorney General
Charleston, West Virginia
Counsel for Respondent Department of
Human Services

S. Brent Blankenship, Esq.
S. Brent Blankenship, Attorney at Law,
PLLC
Barboursville, West Virginia
Guardian ad Litem

JUSTICE EWING delivered the Opinion of the Court.

CHIEF JUSTICE BUNN and JUSTICE TITUS dissent and reserve the right to file separate Opinions.

**SYLLABUS BY THE COURT**

1.     "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected.  These findings shall not be set aside by a reviewing court unless clearly erroneous.  A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.  However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety."  Syllabus Point 1, *In re Tiffany Marie S.*, 196 W. Va. 223, 470 S.E.2d 177 (1996).

2.     "W. Va. Code § [49-4-607 (2016)] permits a parent to voluntarily relinquish his/her parental rights.  Such voluntary relinquishment is valid pursuant to W. Va. Code § [49-4-607 (2016)] if the relinquishment is made by 'a duly acknowledged writing' and is 'entered into under circumstances free from duress and fraud.'"  Syllabus Point 3, *In re Cesar L.*, 221 W. Va. 249, 654 S.E.2d 373 (2007).

**EWING, Justice**:

The petitioner mother voluntarily relinquished her parental rights to her five children. On appeal to this Court, she contends that the circuit court erred in accepting her relinquishments and terminating her parental rights because she did not know that relinquishing was permanent. To the contrary, the petitioner's binding admissions in the written voluntary relinquishments unequivocally demonstrate that she was aware of their permanent nature, so we affirm the circuit court's order.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On December 11, 2023, the Department of Human Services ("DHS") filed a petition for immediate custody of the minor children, A.A., G.C., K.C.-1, K.C.-2, and P.C., alleging that three of these children, K.C.-1, K.C.-2, and G.C., witnessed the fatal stabbing of their (and P.C.'s) father by the petitioner's boyfriend, with whom the petitioner and the five children lived.[1] The children were removed from the home and placed with their maternal grandmother.

Among other allegations, the petition detailed "numerous referrals on the family over the years," which have "mentioned drug use as a concern," and that the DHS,

---

[1] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e). Because two of the children share initials, we use numbers to differentiate them. A.A.'s father was initially part of these proceedings but was later dismissed as a non-abusing parent.

1

about a month prior to the fatal stabbing, had substantiated abuse and neglect allegations against the now-deceased father due to his failure to appropriately restrain the children in the vehicle he was driving, which caused them to become injured when he wrecked that vehicle. The Child Protective Services worker recounted in the petition that she asked the petitioner why the father was at the home on the day of the stabbing, given the substantiated allegations. The petitioner claimed that the father "had just shown up at the house," but A.A. and P.C. told the worker that he "had been at their home for weeks."

The Child Protective Services worker also set forth in the petition that, on the December day the children were removed from their home, K.C.-1 and K.C.-2, who are twins, were in diapers only—no clothing, socks, or shoes. One of the twins had a black eye, and the other "had several scabs on his penis." G.C. was not wearing shoes or socks, and his "toenails and feet were black with dirt." The worker also detailed that G.C. "made a 'stab motion' and was trying to tell the two older [siblings, A.A. and P.C.,] who had been at school what he had witnessed." The worker noted that all children "had a smell to them as if they had not bathed for a period of time," and P.C. and A.A. said that "they didn't always have lots of food at their home." When the worker asked the petitioner about her twins' injuries, she said she was unaware of them.

The petition alleged that the children were in "imminent danger due to the [petitioner] being detained by WV State Police and the father . . . being stabbed at the family home by the petitioner's current boyfriend," and the petitioner "was not able therefore to care for the children and her home was a crime scene for multiple hours." Also

2

noting the reported drug use and that the petitioner allowed the father around the children despite knowing that the substantiated abuse and neglect precluded that contact, the petition further alleged that the petitioner "lacks parenting knowledge skills, or motivation which affects the childrens [sic] safety as she left her five children in the home with [her boyfriend] who had just stabbed the father of four of the children and was transporting [him] to a hospital or medical facility for care." The petition also cited the petitioner allowing her boyfriend "to care for her five children" and her allowing the children to be around both her boyfriend and the now-deceased father "even though she had a history of domestic violence with [the father] and had filed a DVP against him previously."

The circuit court held an initial hearing on December 14, 2023. At that time the court ordered the petitioner to drug screen and granted her motion for visitation with the children. The court found that it was in the children's best interests to remain in DHS's temporary legal custody and the maternal grandmother's physical custody.

On March 4, 2024, the petitioner was arrested and charged with the felony offense of child neglect creating a substantial risk of death or serious bodily injury, in violation of West Virginia Code § 61-8D-4(c) (2014). The parties agree that the charge relates to the stabbing that resulted in the death of G.C., K.C.-1, K.C.-2, and P.C.'s father,

but the specifics of the petitioner's conduct forming the basis of this charge are not before this Court.[2]

Although the appendix record is sparse, it appears that the petitioner produced negative drug screens and visited with the children during the next few months. The circuit court also held various status hearings during that time. Following a status hearing held on July 1, 2024, the court observed that the petitioner was "currently at the [p]reliminary[] [h]earing procedural stage" and set the matter for an "evidentiary hearing" on July 31, 2024. The court also directed the multidisciplinary treatment team to meet prior to the scheduled evidentiary hearing.

At the July 31, 2024, hearing, the guardian ad litem reported that, while the matter had been set for a preliminary hearing and evidentiary hearing, there had "been some significant changes" since the required multidisciplinary treatment team meeting, as he expected that the petitioner would voluntarily relinquish her parental rights to all five children. The petitioner's counsel confirmed that the petitioner intended to relinquish. The court asked the petitioner's counsel whether he had had "sufficient time and opportunity to be able to go over everything with [the petitioner] to make sure that she feels that she

---

[2] The petitioner included certain documents related to her criminal charge in the appendix record; however, the children's guardian ad litem moved to have them struck, as they were not made part of the record below or considered by the circuit court. We granted the guardian's motion on April 17, 2025. *See* W. Va. R. App. P. 6 & 7 (providing that the "record on appeal consists of the documents and exhibits filed in the proceedings in the lower tribunal" and requiring an appendix record to "contain accurate reproductions of the documents and exhibits submitted to the lower court").

understands what's going on?" The petitioner's counsel confirmed, "Your Honor, we've had numerous discussions, including several today." Counsel also confirmed that he had "answered all the questions [the petitioner had] posed to [him,]" and he did not believe that the petitioner had "any others." The court asked the petitioner directly, "Ma'am, do you have any questions that you would like to pose to me?" "I don't think so," she answered. The court also asked the petitioner whether anyone had "threatened, any coercion, undue influence, anything like that to get you to do this?" She responded, "No, Your Honor."

The circuit court then took a recess to allow the petitioner to sign written voluntary relinquishments. She signed a separate voluntary relinquishment form for each of her five children. The forms were identical in substance, and so for each child, she made the following averments that are relevant to this appeal:

> I have come to the conclusion after mature consideration that I am unable and will never be able to care for the above named child and that the interest of said child will be best served by permanent transfer of legal guardianship to the West Virginia [DHS] and placement for adoption.
>
> . . . Believing it to be in the best interest of said child . . . I hereby voluntarily consent to the permanent transfer of the legal and physical custody of said child to the [DHS] for the purpose of placing them for adoption.
>
> . . . I understand that I am surrendering all legal claims upon this child, . . . I understand that termination of parental rights and obligations is permanent . . . .
>
> . . . .
>
> I further understand that I am authorizing the West Virginia [DHS] to consent to the adoption of said child . . . .

I understand this relinquishment is a final act and may be revoked only if:

1.) I and the Department agree to its revocation prior to the entry of an adoption order;

2.) I provide by clear and convincing evidence . . . that the Relinquishment was obtained by fraud or duress; or

3.) I prove by clear and convincing evidence, prior to the entry of an adoption order, that this Relinquishment does not comply with the requirements set forth in West Virginia Code §48-22-303.

Further, the petitioner confirmed that she had "read this relinquishment, or it was read to [her] before [she] signed it" and that she "understand[s] English or an interpreter [was] provided for [her]."

The circuit court judge also signed each voluntary relinquishment form, affirming that, for each child, he was

of the opinion that said parent understands the nature and consequences of such act; has not been induced by threat or reward to sign the relinquishment; and that said relinquishment is the free, voluntary and knowing act of the minor parent. I do, therefore, approve the relinquishment. I find that this relinquishment is in the best interest of the child and to remain in the home would be contrary to the child's welfare.

When the hearing resumed after the written voluntary relinquishments were signed, the circuit court accepted the relinquishments from the petitioner, and the court asked the petitioner's counsel whether there was any concern "in regard to any undue influence, coercion, improper influence or anything like that?" The petitioner's counsel said, "No, Your Honor." The court asked the petitioner whether she had any questions,

and she responded, "No, sir." The court concluded that the voluntary relinquishments were in the children's best interests and were "knowingly, intelligently and voluntarily done without any fraud und[ue] influence, [or] coercion."

In view of her choice to voluntarily relinquish her parental rights, the petitioner waived her right to a preliminary hearing, and the circuit court found that waiver to have been freely, knowingly, intelligently, and voluntarily made. The voluntary relinquishments served as bases to adjudicate the petitioner as an abusing parent and to adjudicate each child as an abused and/or neglected child. *See* W. Va. Code § 49-4-607 (2016) (providing that when a parent voluntarily relinquishes, and the voluntary relinquishment is accepted by the circuit court, "the relinquishment may, without further evidence, be used as the basis of an order of adjudication of abuse and neglect by that parent of his or her children"). The court then terminated the petitioner's rights to the subject children, concluding in its October 4, 2024, order that the voluntary relinquishments were free from fraud or duress and that it was in the children's best interests to accept the voluntary relinquishments. It is from the court's October 4, 2024, order accepting the petitioner's voluntary relinquishments and terminating her parental rights that she now appeals.[3]

---

[3] The petitioner's boyfriend (although it was represented that he and the petitioner were no longer together by the time of the July 31, 2024, hearing) voluntarily relinquished his guardianship and custodial rights to the children at the July 31, 2024, hearing. A.A.'s permanency plan is to remain in the custody of her non-abusing father, and the permanency plan for the other children is adoption in their current placement.

## II. STANDARD OF REVIEW

Our longstanding standard of review applicable to abuse and neglect matters is as follows:

> Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety.

Syl. Pt. 1, *In re Tiffany Marie S.*, 196 W. Va. 223, 470 S.E.2d 177 (1996).

## III. DISCUSSION

The petitioner argues that the circuit court erred in allowing her to voluntarily relinquish her parental rights to her five children. Before delving into the specifics of her argument, we first observe that West Virginia Code § 49-4-607, which addresses the consensual termination of parental rights in child abuse and neglect cases, provides, in relevant part, that "[a]n agreement of a natural parent in termination of parental rights is valid if made by a duly acknowledged writing, and entered into under circumstances free from duress and fraud." Likewise, we held in Syllabus Point 3 of *In re Cesar L.*, 221 W. Va. 249, 654 S.E.2d 373 (2007), that "W. Va .Code § [49-4-607 (2016)] permits a

8

parent to voluntarily relinquish his/her parental rights. Such voluntary relinquishment is valid pursuant to W. Va. Code § [49-4-607 (2016)] if the relinquishment is made by 'a duly acknowledged writing' and is 'entered into under circumstances free from duress and fraud.'" We have also recognized that because the statute's language "suggests that such an agreement may be invalid if it is not entered into under circumstances that are free of duress and fraud," a circuit court can "look behind the face of the document to determine whether or not a parent signed the agreement to relinquish their parental rights under circumstances free from duress and fraud." *State ex rel. Rose L. v. Pancake*, 209 W. Va. 188, 191, 544 S.E.2d 403, 406 (2001); *see also id.* at 189, 544 S.E.2d at 404, Syl. Pt. 3 (holding that a circuit court may conduct a hearing to make this determination). The question of "[w]hether there has been fraud or duress is a question of fact," and it "must be determined by the circuit court judge." *Id.* at 191, 544 S.E.2d at 406.

Turning now to the specifics of the petitioner's argument to this Court, she claims that her counsel below[4] advised her that a voluntary relinquishment was "not permanent and could be reversed after her criminal charges were dismissed." She argues that her counsel below was "clearly wrong and clearly misled" her in this regard because, "[a]s this [C]ourt knows, the relinquishment of parental rights is permanent and cannot be undone," unless, as the petitioner acknowledges, there is proof that the voluntary relinquishments were obtained through fraud or duress or that they did not comply with

---

[4] The petitioner was represented in the circuit court by counsel different from that on appeal.

9

West Virginia Code § 49-4-607 or Rule 35 of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings.[5] Because she alleges that she "relinquished her parental rights with the understanding [that] if the criminal case was resolved she could get her children back," however, and therefore "did not understand that a [v]oluntary [r]elinquishment is a final act," she contends that the circuit court erred in allowing her to voluntarily relinquish her parental rights.

Here, in her sole assignment of error, the petitioner does not ever argue that her voluntary relinquishments failed to comply with West Virginia Code § 49-4-607 or Rule 35, nor has she even sought, let alone obtained, a determination from the circuit court she relinquished under fraud or duress.[6] Rather, she claims only that she did not understand

---

[5] Relevant to the circumstances of the petitioner's voluntary relinquishments, Rule 35 of the Rules of Procedure for Child Abuse and Neglect Proceedings provides that

> [i]f a parent voluntarily relinquishes parental rights or fails to contest termination of parental rights, the court shall make the following inquiry at the disposition hearing:
>
> . . . .
>
> (3) If the parent is present in court and voluntarily has signed a relinquishment of parental rights, the court shall determine whether the parent fully understands the consequences of a termination of parental rights, is aware of possible less drastic alternatives than termination, and was informed of the right to a hearing and to representation by counsel.

[6] The petitioner included in the appendix record documents that purportedly support her claim that former counsel misled her regarding the permanent effect of her voluntary relinquishments. By order entered April 17, 2025, we granted the guardian ad litem's motion to strike these documents and corresponding references to them in the petitioner's

the permanent nature of her voluntary relinquishments because her former counsel misled her. But that assertion is flatly and repeatedly contradicted by the binding representations she made in the five relinquishment forms she signed. In a separate voluntary relinquishment form completed for each child, the petitioner asserted that she would "*never* be able to care for*" her children and that "mature consideration" had led her to the conclusion that "*permanent* transfer" and "placement for adoption" was therefore in her children's best interests. (Emphasis added.) She affirmed her understanding "that termination of parental rights and obligations is *permanent*" and that each relinquishment was "a *final* act" that could be revoked only under limited circumstances, such as fraud or duress. (Emphasis added.) Indeed, the word "permanent" appears three separate times in each of the five relinquishments, demonstrating that the petitioner knew that the transfer of legal custody was permanent and that the consequent termination of her parental rights was permanent.

This Court faced an argument similar to the petitioner's in *In re Cesar L.* In that case, a mother who had voluntarily relinquished her parental rights to her child moved to withdraw that relinquishment, in accordance with *Rose L.*, claiming that it was not

---

brief because the documents were not considered by the circuit court or contained in the record below. To the extent that the petitioner intended for these documents and related references to demonstrate that her voluntary relinquishments were obtained by fraud or duress, as stated above "[w]hether there has been fraud or duress is a question of fact that must be determined by the circuit court judge," not this Court. *Rose L.*, 209 W. Va. at 191, 544 S.E.2d at 406. For this additional reason, the documents and related arguments are not properly before this Court.

voluntary and had been obtained under duress. 221 W. Va. at 253, 654 S.E.2d at 377. The mother submitted an affidavit to the circuit court asserting that her attorney had "not explained the ramifications of the voluntary relinquishment to her and that she had been led to believe that her parental rights would be terminated if she did not sign the relinquishment form." *Id.* at 253–54, 654 S.E.2d at 377–78. Concluding that the mother was not subject to fraud or duress when she signed the relinquishment form, the court determined that her relinquishment was valid and denied her motion to withdraw. *Id.* at 254, 654 S.E.2d at 378.

On appeal to this Court, the mother argued that the circuit court erred in determining that her voluntary relinquishment was valid and refusing to set it aside. *Id.* at 259–60, 654 S.E.2d at 383–84. We agreed with the circuit court that the mother did not prove that she relinquished her parental rights under fraud or duress. *Id.* at 262, 654 S.E.2d at 386. In particular, we were "[un]convinced" that the mother's former counsel coerced her to voluntarily relinquish where the assertions in her affidavit suggesting duress or coercion were "sharply contradict[ed]" by the representations in her voluntary relinquishment that she understood the consequences of and had not been coerced into relinquishing. *Id.* We stated that the "statements contained in [the mother's] relinquishment constitute judicial admissions by which she is bound and which she cannot now deny." *Id.* (citation omitted). And because the mother was "bound by the admissions contained in her relinquishment," we could not "condone her present attempts to recant

12

these statements absent clear and convincing evidence of the duress to which she claims to have been subject at the time thereof." *Id.*

Just as in *In re Cesar L.*, because the petitioner has not established (or even argued) that her voluntary relinquishments were obtained through fraud or duress, she is bound by the statements contained in them, and we cannot condone her attempts to recant her multiple representations that she understood the permanent nature of the relinquishments. Her numerous confirmations of this knowledge and understanding "stop [her] from subsequently asserting any claim inconsistent therewith." *Id.* (quoting *Wheeling-Pittsburgh Steel Corp. v. Rowing*, 205 W. Va. 286, 302, 517 S.E.2d 763, 779 (1999)). As these confirmations preclude her from claiming that she was unaware of the permanent nature of voluntarily relinquishing her parental rights, and as that claimed lack of knowledge is the only basis on which she contends that the circuit court erred in accepting her relinquishments, she has demonstrated no error.[7]

---

[7] Although the voluntary relinquishment forms signed by the petitioner clearly and repeatedly demonstrate that she knew relinquishing her parental rights was permanent and final—and are therefore sufficient to demonstrate that she is not entitled to relief on the basis claimed before this Court—we nevertheless note that these forms are not tailored to voluntary relinquishments under Chapter 49 of the West Virginia Code. Rather, they appear tailored to relinquishments under Chapter 48. They directly reference West Virginia Code § 48-22-303 and include representations required for relinquishments under that Chapter. We caution circuit courts to be mindful of the distinctions between Chapter 48 and Chapter 49 voluntary relinquishments and use forms or agreements tailored to the particular relinquishment. *See In re A.R.*, No. 18-0050, 2019 WL 2452717, *2 n.3 (recognizing that Chapter 49 of the West Virginia Code and the Rules of Procedure for Child Abuse and Neglect Proceedings contain provisions for relinquishing and for revoking relinquishments that are "separate and distinct" from such provisions in Chapter 48).

## IV. CONCLUSION

For the reasons stated above, we affirm the Circuit Court of Lincoln County's October 4, 2024, order accepting the petitioner's voluntary relinquishments and terminating her parental rights.

Affirmed.